PRESTON C. BIRDSEY *v.* JOHN KOSIENSKI ET AL.

BALDWIN, INGLIS, O'SULLIVAN, QUINLAN and DALY, Js.

Argued October 15—decided November 10, 1953

*Charles G. Albom* and *Joseph Bogdanski,* for the appellants (defendants).

*Samuel H. Platcow,* with whom was *Francis R. Danaher,* for the appellee (plaintiff).

INGLIS, C. J. The trial court rendered a judgment enjoining the defendants from obstructing a right of way which the plaintiff claimed to have over their land. On this appeal from that judgment the principal contentions are that the court erred in concluding that the plaintiff owned the right of way, particularly in the course designated by the court, and that, if the right of way existed, the court should have refused an injunction because the plaintiff had been over-burdening the easement.

The facts found may be summarized as follows: The defendants are the owners of a tract of land which fronts on the north side of East Main Street in Meriden. The property is bounded on the north by the plaintiff's land, which, together with a portion of the defendants' land, was originally owned by Charles Seeley. On March 27, 1861, Seeley conveyed by warranty deed to Parker and Perkins one of the parcels included in the tract now owned by the defendants. As described in the deed, the land conveyed was bounded on the north by Seeley's land and on

the south by the Middletown and Meriden turnpike, which is now East Main Street. The deed contained the following language: "I reserve the right of passway from the north end to the south end of said piece of land." This conveyance was recorded at volume 23, page 46, of the Meriden land records. On the same day Parker and Perkins, by separate deed recorded at volume 23, page 47, of the Meriden land records, granted the right to Seeley to construct a road over the land in question.

By various mesne conveyances the property conveyed to Parker and Perkins, hereinafter referred to as the servient tenement, came, on August 10, 1939, to Alexander W. Tomkievicz, and in such of those conveyances as were warranty deeds the property was warranted free of all incumbrances except as appeared of record. Tomkievicz conveyed to Joseph F. Fredericks and P. B. Goodale by deed dated April 9, 1946. This deed recited that the property was subject to the right of way reserved in the deed from Seeley to Parker and Perkins dated March 27, 1861, volume 23, page 46, of the land records, and to the right to construct a road contained in the deed from Parker and Perkins to Seeley at volume 23, page 47, of the land records. In all the conveyances which finally brought title from Tomkievicz into the Hartford-Connecticut Trust Company on June 9, 1948, the same incumbrances were mentioned. The Hartford-Connecticut Trust Company conveyed to the defendant Thaddeus Kosienski by quitclaim deed on June 9, 1948. That deed made no mention of incumbrances, but in the mortgage deed which Thaddeus gave to the Hartford-Connecticut Trust Company the two incumbrances were recited in full. On July 1, 1950, Thaddeus quitclaimed an undivided one-half interest in the property to the named defendant.

The property which Charles Seeley continued to own after his conveyance to Parker and Perkins, that is, the dominant tenement, was quitclaimed by him to George Seeley on August 2, 1873. George Seeley conveyed it by warranty deed dated March 25, 1874, to J. S. Manley. The description of the property conveyed included: "... also all ... right, title and interest in a certain right of way from farm to Charles Parker land to Turnpike Road, as will appear of record in deed from Parker and Perkins to Charles Seeley received for record March 27, 1861. ... Also a right of way from farm to highway running between the two shops, as will also appear of record." By various mesne conveyances, in all of which the rights of way were expressly mentioned, title to the dominant tenement came to Georgia Birdsey by deed dated February 26, 1880. It has been in the Birdsey family ever since, going first to Edwin A. Birdsey and Arthur T. Birdsey in 1906, then to Arthur T. Birdsey alone and then to his son, the present plaintiff, in 1941.

At least as far back as 1907, two buildings were located on the servient tenement, a frame structure known as the spoon shop and, to the west of it, a stone building also used as a shop. There was a fence along the front of the property on East Main Street with a gate in it. From this gate a roadway about twenty-five feet wide extended to the north about thirty-five feet, then west about 150 feet and then north again between the two buildings to the dominant tenement. This roadway was the only means of access to the dominant tenement from East Main Street. It continued over the dominant tenement to gravel pits located thereon. Prior to 1939 the roadway was used by the plaintiff's father and his predecessors in title as a way to cart farm pro-

duce, hay, ice and gravel from the farm to East Main Street. In 1913 a slaughterhouse was erected on the dominant tenement, and from then on the road was used for transportation to and from the slaughterhouse.

Shortly after Tomkievicz acquired the servient tenement in 1939, he constructed a building thereon which later became known as the Sun Valley Restaurant. The front of this building was about thirty feet north of the portion of the roadway which ran in an easterly-westerly direction, and the west side of it was about fifty feet east of the roadway as it turned to the north. By that time the two old shops had been demolished. Tomkievicz built two driveways as entrances to the restaurant, one to the east and the other to the west. After the building was completed, Tomkievicz, desiring to eliminate vehicular traffic in front of the restaurant, proposed to the plaintiff's father that the location of the passway be changed so that it would run from East Main Street over the westerly driveway just constructed by Tomkievicz and thence on north to the dominant tenement. Birdsey agreed to the proposal, and thereafter he and, pursuant to his direction, all others who had occasion to reach the dominant tenement used the way in the new course agreed upon. On several occasions thereafter, the plaintiff and his father repaired the new roadway on the servient estate.

Commencing in 1942, a portion of the dominant tenement was leased for the purpose of removing sand and gravel. From then on, the passway was used more and more for the carting of gravel until, by 1951, a total of 150 crossings a day were being made. The defendants complained to the plaintiff, and the lessee of the plaintiff put calcium chloride upon the modified roadway to lay the dust and also

repaired some holes made by his trucks. Finally, however, in January, 1952, the defendants barricaded the roadway.

The defendants seek many additions to the finding. Most of them, if supported by the evidence, would relate only to the question whether the plaintiff and his predecessors in title had acquired a right of way by prescription. Inasmuch as the trial court did not predicate the judgment on a right of way by prescription, these requested additions are immaterial. Several others are immaterial for other reasons or are not undisputed facts. One only calls for notice. It is a request for a finding that at the time of the conveyance in 1861 the dominant tenement was bounded upon East Main Street at the place it now touches it. This has reference to the fact that the plaintiff's property now extends to East Main Street some distance to the east of the servient tenement. There is nothing in the evidence to indicate that Seeley owned this frontage. In the deed from George Seeley to J. S. Manley in 1874, the dominant tenement is described as being bounded on the south by "land of Charles Parker and highway." It is quite possible that the land which brought the boundary down to the highway was acquired by one of the owners of the dominant estate subsequent to 1861. This requested addition to the finding may not be made.

Upon the facts found, the court concluded that the easement created by the deeds in 1861 is one appurtenant to the plaintiff's land and was not personal to Charles Seeley; that the oral agreement between the plaintiff's father and Tomkievicz modifying the location of a portion of the right of way was valid and enforceable; and that therefore the plaintiff is the owner of a right of way, created by grant, in the

course established by that agreement. It further concluded that the use made of the right of way was not unreasonable and that the barricading of the right of way constituted an unlawful interference with the plaintiff's rights.

The basic question in the case is whether the trial court was warranted in interpreting the reservation made in the deed from Charles Seeley to Parker and Perkins in 1861 as being the reservation of an easement which would run with Seeley's land rather than a merely personal easement. This question is to be resolved by seeking the intent of the parties as expressed in the deed, and this intent is to be ascertained by reading the words of the deed in the light of the attendant circumstances. The reservation made no mention of the heirs and assigns of Seeley. This fact creates a presumption that the intent of the parties was that merely a personal right of way was reserved. *Taylor* v. *Dennehy,* 136 Conn. 398, 402, 71 A.2d 596; *Kowalski* v. *Mather,* 112 Conn. 594, 595, 153 A. 168. Both cases cited, however, recognize that the presumption created by the omission of the words of inheritance is not conclusive. A reservation of an easement running with the land to which it is appurtenant may be created without the use of words of limitation to the heirs and assigns of the grantor. 6 Thompson, Real Property, § 3505. Such a reservation will be interpreted as creating a permanent easement if, from all the surrounding circumstances, it appears that that was the intention of the parties. *Knowlton* v. *New York, N.H. & H.R.Co.,* 72 Conn. 188, 192, 44 A. 8; *Chappell* v. *New York, N.H. & H.R. Co.,* 62 Conn. 195, 203, 24 A. 997.

One circumstance which must be given great weight in the ascertainment of the intent of the parties is that the easement is of value to the dominant

tenement itself. If it is of value to the property to which it is appurtenant and will continue to be of value whoever may own the property, that is strong evidence that the parties intended a permanent easement. *Randall* v. *Latham,* 36 Conn. 48, 53.

In the present case, it is apparent that an outlet from Seeley's back land to the old Middletown-Meriden turnpike was of great value to the land. It is fair to assume that the present East Main Street, formerly the turnpike, was, in 1861, the main traveled road in the vicinity. So far as the finding discloses, when the tract fronting on that road was sold to Parker and Perkins, all access from the then Seeley land to the road would have been cut off if the right of way in question had not been created. Indeed, the finding does not disclose that in 1861 the dominant tenement had access to any other passable public highway. Clearly, the right to pass over the land conveyed by Seeley was of such value to the land retained by him that it is inconceivable that he would intend to reserve the passway for his personal use only and not for the benefit of the land itself, or that Parker and Perkins would expect him to do so.

It is also significant that the owners of the servient tenement recognized the rights of the owners of the dominant tenement for a long period of time after Seeley ceased to be the owner of the latter. *Schroeder* v. *Taylor,* 104 Conn. 596, 603, 134 A. 63. They recognized that the easement ran with the land not only by permitting the use of the way for more than ninety years but also by acknowledging in many of the deeds in their chain of title that the right of way was still in the later years an incumbrance on their land. In the light of all the circumstances, the trial court was warranted in concluding that it was the intent of the parties to the deed of 1861 to create an easement

which would run with the Seeley land permanently, and not an easement personal to Seeley.

In the judgment, the court describes a course for the passway different from that which existed and was used prior to 1939. The course so described was the one orally agreed upon in that year by Tom-kievicz and the plaintiff's father. The defendants contend that this oral agreement was ineffective because it contravened the Statute of Frauds. See *Nichols* v. *Peck,* 70 Conn. 439, 442, 39 A. 803. The answer to this claim is that the agreement was taken out of the statute by part performance by the plaintiff's father. His performance of the oral contract consisted of abandonment of his right of way over the former course, to say nothing of his making expenditures to repair and improve the new course. See *Stueck* v. *G. C. Murphy Co.,* 107 Conn. 656, 662, 142 A. 301; *Schroeder* v. *Taylor,* supra, 604; *American Brass Co.* v. *Serra,* 104 Conn. 139, 148, 132 A. 565. Such abandonment of the former course of the way, as well as the working of the new way, clearly related to some contract existing between the parties in relation to the subject matter in dispute and therefore took the contract out of the statute. The conclusion that the modified course of the way was the present established course was correct. *Santoro* v. *Mack,* 108 Conn. 683, 688, 145 A. 273.

At the trial and upon this appeal, the defendants have claimed that no injunction should be issued against them because the plaintiff had overburdened the easement by using the way for the cartage of gravel in such large quantities and on frequent occasions. It is to be borne in mind that the right of way in this case is one created by grant and not by prescription. See *Hawley* v. *McCabe,* 117 Conn. 558, 560, 169 A. 192. Moreover, it is one created in gen-

eral terms and without any restrictions on its use. Such a grant is to be construed as broad enough to permit any use which is reasonably connected with the reasonable use of the land to which it is appurtenant. *Peck* v. *Mackowsky,* 85 Conn. 190, 194, 82 A. 199; *Swensen* v. *Marino,* 306 Mass. 582, 585, 29 N.E.2d 15; see *Sweeney* v. *Landers, Frary & Clark,* 80 Conn. 575, 579, 69 A. 566. The reasonable uses of the dominant tenement in connection with which the passway may be used are not limited to those to which the land was being put when the way was granted. *Anzalone* v. *Metropolitan District Commission,* 257 Mass. 32, 36, 153 N.E. 325; *Parsons* v. *New York, N.H. & H.R. Co.,* 216 Mass. 269, 273, 103 N.E. 693; note, 130 A.L.R. 768, 770; 28 C.J.S. 767. In particular, it is a reasonable use of a general right of way to draw sand and gravel over it, even though no gravel pits had been opened on the dominant tenement when the easement was created. *Randall* v. *Grant,* 210 Mass. 302, 304, 96 N.E. 672. It was a reasonable use of the dominant tenement to take sand and gravel therefrom in such quantities as the owners thereof saw fit. Consequently, by virtue of their easement they had the right to cart the sand and gravel over the passway. Under the circumstances the issuance of the injunction was proper. See *Greist* v. *Amrhyn,* 80 Conn. 280, 290, 68 A. 521.

There is no error.

In this opinion the other judges concurred.