THE SHOREFRONT PARK IMPROVEMENT ASSOCIATION, INC., ET AL. *v.* LEWIS KING ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

250

Argued October 3—decided December 10, 1968

*Robert A. Slavitt,* with whom, on the brief, was *Abraham D. Slavitt,* for the appellants (defendants).

*John Keogh, Jr.,* and *Robert A. Fuller,* with whom, on the brief, was *Alfred W. Burkhart,* for the appellees (plaintiffs).

HOUSE, J. This action was instituted by several individual owners and by an incorporated association representing other owners of lots designated on a subdivision map to prohibit by injunction a proposed use of several lots in the subdivision, which use, it is claimed, would be in violation of restrictive covenants imposed upon all of the lots. The defendants have appealed from the judgment

of the Superior Court, which found the issues for the plaintiffs and granted them injunctive relief.

With such minor corrections as the defendants have pressed and to which it appears they are entitled, the record discloses the following material circumstances. In 1924, a fifty-acre tract of land in Norwalk, on the west side of Norwalk Harbor, was subdivided by The Shorefront Park Company. A subdivision map was filed in the office of the town clerk, and lots delineated on the map were sold to the individual parties to this action or to their predecessors in title. All of the lots were conveyed by The Shorefront Park Company subject to certain restrictive covenants, which, so far as in any way material to the issues in this case, are printed in the footnote.[1]

The subdivision map shows the lots which abut on the harbor area as numbered lots and as extending almost, but not all the way, to the approximate mean high-water mark. Beyond that lot line and extending easterly into the harbor, the map shows an extension of the lateral boundaries of each such

---

[1] "The Grantee hereby agrees that neither said premises nor any building now or hereafter placed upon said premises shall be used for manufacturing, mercantile or advertising purposes or for any business or trade whatsoever; and that no building shall be erected on said premises except a one family dwelling house, which shall cost not less than $7,000.00 to be used for a private dwelling only, and a suitable garage for private use only. No building of any kind shall be erected on the premises nearer than twenty five feet from the sea wall or nearer than twenty feet from the rear line of said lot nor nearer than eight feet from any side boundary line of said lot. The Grantee further agrees that no building shall be erected on the premises without a septic tank installed for the disposal of sewage from such dwelling or building. . . . These restrictions are placed on said premises for the benefit of the entire tract of which this is a part and it is agreed that the same restrictions are to be incorporated in every instrument conveying or leasing the same."

lot, and the land lying therein and appurtenant to each numbered lot is designated by its respective appurtenant lot number, followed by the letter A, viz., lot 22A is an extension easterly past the high-water mark and into the harbor of lot 22. The individual defendants are the owners of lots 22 through 28 as shown on the subdivision map, together with the appurtenant rights in and to the land shown on the map marked lots 22A through 28A. In each conveyance, the deed from The Shorefront Park Company conveyed a fee simple to the numbered lot "together with all the right, title and interest of the grantor in and to" the A lot appurtenant to the numbered lot and extending from the easterly side of the numbered lot "to the waters of Norwalk Harbor." The metes and bounds description of the numbered lot and the description of the appurtenant A lot are thereafter followed by the restriction hereinbefore noted, which applied to "said premises." All of the numbered lots within the tract have long since been sold by the developer, and one-family residences have been erected on them which are designed for year-round use and are well maintained and kept in good repair. The community is residential in character, and none of the lots or buildings are now being used or have in the past been used for manufacturing, mercantile or advertising purposes or for any business or trade.

The defendants King and Chacon have leased their land to the defendant corporation, The Shorefront Yacht and Marina Company, Inc., and the defendants have filed an application with the building inspector of the city of Norwalk for a permit to build a yacht club on the premises to be known as The Shorefront Yacht Club and Marina. The building plans for the yacht club provide for the use of the

two existing residences on the defendants' properties as clubhouses and for club purposes. Each of the applications and each of the permits is for permission to "convert a dwelling to a club house . . . interior alterations only to be occupied by The Shorefront Yacht Club & Marina Inc." Each bears the notation: "Req. off street parking 30 spaces for 2 Bldgs -- # A & B black topped marked & lighted." The lease to the corporation describes the leased property as bounded on the west by the easterly boundary line of lots 22, 23, 24, 25, 25A, 26, 27 and 28, as shown on the subdivision map, and on the east as extending "out to the most easterly allowable limit of private use in Norwalk Harbor of properties abutting said harbor on the Westerly side thereof." It also includes a right to pass and repass for all lawful purposes over and across two forty-foot-wide strips of land upon such portions of lots 22, 23, 24, 25, 25A, 26, 27 and 28 as the lessors shall designate, to be "so located as to give to the Lessee reasonable and proper access to the demised premises for the full and useful operation of a boat club on the demised premises." The club's plans include a proposal to place floats, piers and other docking facilities on or adjacent to the property of the defendants marked lots 22A-28A.[2]

[2] The defendants' application to the water resources commission was "to construct, install and maintain 2 solid masonry piers, each 25 feet by 7 feet; 6 ramps each 15 feet by 5 feet; an L-shape line of floats 180 feet by 6 feet and 200 feet by 6 feet; then a line of floats 270 feet by 6 feet with a T-head 90 feet by 6 feet, and 18 finger floats 35 feet by 2.5 feet; another line of floats 300 feet by 6 feet with a T-head 90 feet by 6 feet, and 20 finger floats 35 feet by 2.5 feet, and necessary mooring piles. Then to dredge an area approximately 450 feet by 380 feet to a depth of 6 feet at mean low water approximately 3000 feet northwest of Gregory Point in Norwalk Harbor at Norwalk. Dredged material approximately 20,000 cubic yards to be deposited in an approved dumping ground in Long Island Sound."

The defendants have not attacked the conclusions of the trial court that the defendants had actual or constructive knowledge and notice of the restrictive covenants when they acquired lots 22 through 28, and the appurtenant A lots, and that there has been no change of conditions or of circumstances which would serve to defeat or "mitigate against" the intention of the common grantor in imposing the restrictive covenants on the premises. Nor do they contest the findings that the building plans for the yacht club provide for the use of the existing residence buildings "as club houses and for club purposes" and that the operations of the club and marina would be similar to such operations as are customarily carried on by yacht clubs and marinas. They have not briefed their claims that the court erred in concluding that the defendants' lots are subject to the restrictive covenants and that the plaintiffs, by virtue of their title to their respective lots, are the owners of reciprocal rights in the nature of equitable easements, which rights are enforceable. These assignments of error are, accordingly, treated as abandoned. *Wood* v. *Wilton,* 156 Conn. 304, 306, 240 A.2d 904; *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 77, 239 A.2d 500.

The defendants do claim that the court erred in its remaining conclusions that the proposed use of the buildings now situated on the premises would constitute a use of the buildings for a purpose other than as a private dwelling within the meaning of the restrictive covenants; that the use of lots 22 through 28 as a means of access to and egress from the proposed marina and yacht club to the proposed piers and moorings on the A lots would constitute a violation of the first clause of the restrictive covenant; that the use of lots 22 through 28 for the

purpose of parking automobiles and other uses incidental to the operations of the yacht club and marina corporation for the benefit of its members and patrons would constitute a violation of the same restrictive clause; that the use of lots 22 through 28 for the maintenance and operation of a clubhouse in which any merchandise was sold, advertised for sale or displayed for sale would constitute a use of the premises for mercantile or advertising purposes in violation of that restrictive covenant; that the defendants' proposed uses of those lots would constitute the conducting of a business on the premises in violation of the restrictive covenant; and that the plaintiffs are entitled to an injunction permanently enjoining the defendants from using the premises for any of the proposed purposes and from leasing the premises to any other person for like purposes.

Notwithstanding the broader scope of the court's conclusions, the injunctive relief which it actually granted was more limited. The judgment does no more than enjoin the defendants against "any use as a yacht club or similar type of business on their premises located at Shorefront Park in the Town of Norwalk . . . and . . . from leasing said premises to any other person or persons for like purposes." It is from this judgment that the defendants have appealed.

So far as the proposed use of the numbered lots is concerned, it is unnecessary to consider many of the claims advanced by the defendants or the precise meaning of the words "club," "trade" and "business." "The word 'club' has a very broad meaning." *Jeffery* v. *Planning & Zoning Board of Appeals*, 155 Conn. 451, 455, 232 A.2d 497. " 'Trade' commonly connotes the buying, selling or exchanging of com-

modities." *Massolini* v. *Driscoll,* 114 Conn. 546, 552, 159 A. 480. "The word 'business' is given widely variant meanings." *Knights of Columbus Council No. 3884* v. *Mulcahy,* 154 Conn. 583, 590, 227 A.2d 413. We have said that "[w]hen applied to a public corporation, the term ["business"] signifies the conduct of the usual affairs of the corporation, and such as commonly engage the attention of its officers." *Massolini* v. *Driscoll,* supra. "In the determination of the meaning in which words in a restrictive covenant are used, the controlling factor, when discovered, is the expressed intent." *Pulver* v. *Mascolo,* 155 Conn. 644, 649, 237 A.2d 97. In the present case, there is no need to apply rules of interpretation as in such cases as *Neptune Park Assn.* v. *Steinberg,* 138 Conn. 357, 361, 84 A.2d 687, and *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 82 A. 561, upon which the defendants rely. The broad prohibition against use of the premises "for any business or trade whatsoever" gives no occasion for the application of the ejusdem generis rule, as in the *Easterbrook* case. The specific restriction that, aside from a garage for private use only, no building be erected on the numbered or A lots except a one-family dwelling house and that such building be used for private dwelling only, unlike the situation in the *Neptune Park* case, clearly limits not only the construction but the use of the building once erected.

Whether or not the activities of the yacht club and marina would be conducted by the corporation for its own profit, the use of the residences for clubhouse purposes clearly comes within the restriction that the one-family dwelling houses be "used for a private dwelling only." The obvious intent and purpose of the restrictive covenants was to preserve the one-family residential character of the develop-

ment. The proposed use of the dwellings for yacht clubhouses would be in violation of this restriction and was properly enjoined. *Hooker* v. *Alexander,* 129 Conn. 433, 438, 29 A.2d 308; *Baker* v. *Lunde,* 96 Conn. 530, 540, 114 A. 673; see *Jeffery* v. *Planning & Zoning Board of Appeals,* supra; *Planning & Zoning Commission* v. *Synanon Foundation, Inc.,* 153 Conn. 305, 308, 216 A.2d 442.

Furthermore, the finding of the court that the operations of the yacht club and marina would be similar to such operations as are customarily carried on by yacht clubs and marinas has not been attacked. The further finding, or, more exactly, the conclusion, that the operation would constitute a use of the premises as a business and for trade is supported by that finding, as well as the fact of the leasing of the premises for such purposes in the first instance, the plan of operation as disclosed by the proposed alterations in the residences and the specific provision in the lease that a portion of the rent is waived in consideration of the lessors' option to designate six persons to club membership, fully paid "excepting however charges as may be incurred by such members for purchases made or specific facilities used, including moorings and marinas."

It is true that title to the land between high- and low-water marks in Norwalk Harbor remains in the state. *Short Beach Cottage Owners Improvement Assn.* v. *Stratford,* 154 Conn. 194, 200, 224 A.2d 532; *Church* v. *Meeker,* 34 Conn. 421. Therefore, in no event do the defendants have a fee simple title to the area below the mean high-water mark. Such title as they have to the portions of the A lots which are above the mean high-water mark is, however, expressly subject to the restrictive covenants, and such riparian rights as they have to build docks, piers and

other structures below that mark are rights which have their source in the property ownership of the land above the high-water mark. *State* v. *Knowles-Lombard Co.,* 122 Conn. 263, 265, 188 A. 275. They are, accordingly, also subject to the same restrictions. They exist only as an original incident of such ownership; *Barri* v. *Schwarz Bros. Co.,* 93 Conn. 501, 506, 107 A. 3; and, in the case of these defendants, are derived from the grants from The Shorefront Park Company, which originally owned the land above the high-water mark, and were acquired by the defendants subject to the restrictive covenants.

We conclude therefore that there was no error in the decision of the trial court that the plaintiffs were entitled to the injunctive relief which they sought and in the judgment which it rendered enjoining the defendants "against any use as a yacht club or similar type of business on their premises located at Shorefront Park . . . and . . . from leasing said premises to any other person or persons for like purposes."

There is no error.

In this opinion the other judges concurred.