KARL B. LEABO ET AL. *v.* STEVEN LENINSKI

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued November 12, 1980—decision released January 20, 1981

*M. Yvonne Gonzalez* and *Michael F. Ross,* for the appellant (defendant).

*Gordon A. Evans,* for the appellees (plaintiffs).

BOGDANSKI, J. This appeal is from an action brought by the plaintiffs seeking to quiet title and to enjoin the defendant from opening a beach for public use, and for damages. After the issues were found for the plaintiffs the defendant appealed.

On the appeal, the defendant maintains that the court erred (1) in the criteria it applied in determining the plaintiffs' easement rights; (2) in finding irreparable injury; (3) in concluding that the policy of public access to beaches did not affect the rights and duties of the parties; and (4) in concluding that the defendant acted with malice.

The following facts are not in dispute. In 1959, the Guilford zoning commission approved a subdivision plan of certain property owned by the estate of George T. Sperry located in the Sachem's Head section of Guilford. The subdivision consisted of six lots situated northerly of Falcon Road and a small piece of rocky shore, known as the "Second Piece," located southerly of Falcon Road. Falcon Road runs east and west along the beach on Long Island Sound and westerly of a proposed private road to be known as Walden Hill Road. The estate also owned additional property not included in the subdivision plan. That property consisted of a 2.23 acre parcel located on the easterly side of Walden Hill Road and a small beach, approximately 1300 square feet in area, located southerly of Falcon Road and easterly of the "Second Piece."

The estate sold the six lots, Walden Hill Road and the "Second Piece" to Falcon, Inc. The deed granted Falcon, its successors and assigns, the "right to use the beach located easterly of the second piece hereinbefore described for the purpose of bathing only." Falcon later sold the six lots and the "Second Piece" to various individuals. Each deed from Falcon contained the following language: "[t]ogether with the right to use in common with others, for the purpose of bathing only, the beach located easterly of the Second Piece." Each deed

from Falcon also conveyed "a right of way for all purposes whatsoever, including the installation and maintenance of public utilities, in common with others, in, through, over and upon Walden Hill Road." The plaintiffs are successors in title to the grantees of Falcon.

On November 22, 1975, the defendant purchased the 2.23 acre parcel from the successor in title of the Sperry estate. The deed referred to the beach as "Second Piece" and included the following language: "[s]aid Second Piece is subject to rights of others of use, as of record in said Land Records will appear." Located on the 2.23 acre parcel were four cottages. The defendant obtained a permit to improve one of the cottages but, after he had incurred much expense in improvements, the Guilford zoning authorities revoked the permit and ordered him to desist and to restore the cottage to its original condition.

The defendant then painted the cottage red, white and blue simulating the American flag and posted large signs announcing the opening of the beach for public use. The Guilford zoning commission sought a temporary injunction claiming that these actions violated the zoning ordinance. The trial court denied the request for the injunction seeking to close the beach on the ground that serious questions of law were involved in this dispute, the resolution of which should await a trial on the merits. It did, however, grant a temporary injunction as to the posted signs. See *Zoning Commission of Sachem's Head Assn.* v. *Leninski,* 34 Conn. Sup. 66, 376 A.2d 771 (1976). The defendant thereafter

purchased Walden Hill Road and began to widen it in order to provide accommodations for the vehicles which the public would use to get to the beach.

The plaintiffs brought the present action claiming that in opening the beach to public use, the defendant caused material interference with their easement rights. They sought an injunction and compensatory and punitive damages. The court granted injunctive relief and punitive damages but denied compensatory damages because of insufficient evidence.

The first issue for determination is whether the plaintiffs' easements are appurtenant or in gross. "This question is to be resolved by seeking the intent of the parties as expressed in the deed, and this intent is to be ascertained by reading the words of the deed in the light of the attendant circumstances." *Birdsey* v. *Kosienski,* 140 Conn. 403, 410, 101 A.2d 274 (1953). If the easement makes no mention of the heirs and assigns of the grantee, a presumption is created that the intent of the parties was that merely a personal right of way was reserved. This presumption, however, is not conclusive. A reservation will be interpreted as creating a permanent easement if, from all the surrounding circumstances, it appears that that was the intention of the parties; *Dunn Bros., Inc.* v. *Lesnewsky,* 164 Conn. 331, 335, 321 A.2d 453 (1973); *Birdsey* v. *Kosienski,* supra, 410.

"One circumstance which must be given great weight in the ascertainment of the intent of the parties is that the easement is of value to the dominant tenement itself. If it is of value to the property to which it is appurtenant and will continue to be of value whoever may own the property,

that is strong evidence that the parties intended a permanent easement." *Birdsey* v. *Kosienski,* supra, 410–11. In its decision, the court found that the evidence clearly established that the plaintiffs' easements enhance the value of the property and that such enhancement was implied by the subdivision's character as a waterfront development. *Klein* v. *Dove,* 205 Md. 285, 107 A.2d 82 (1954).

Also significant is whether the owner of the servient estate recognized the right of the subsequent owners of the dominant estate to exercise the easement. *Birdsey* v. *Kosienski,* supra, 411. As to this aspect the court found that prior to the defendant's acquisition in 1975, only the owners of the lots in the subdivision and their guests used the beach; that the beach was not open to the public, and that the defendant's predecessors in title did not object to such limited use. The court thereafter concluded that the language bearing on the easements clearly indicated that they are to run with the land owned by the plaintiffs and that this intention is further supported by all the surrounding circumstances. We agree. The court further determined that the action of the defendant in opening the beach to the public constituted an irreparable injury for which there was no adequate remedy at law and that the plaintiffs were entitled to injunctive relief.

The rule is well established that the owner of an easement is entitled to relief upon a showing that he will be disturbed or obstructed in the exercise of his right. *Wambeck* v. *Lovetri,* 141 Conn. 558, 564, 107 A.2d 395 (1954). It is also well settled that the court's conclusions must stand if they find support in the evidence or in reasonable inferences from the facts proven; *Dunn* v. *Santino,* 139 Conn. 352, 355,

93 A.2d 726 (1952); and that the credibility of witnesses and the weight to be accorded to the evidence are within the province of the trier of fact. *Ramadei* v. *Saccavino,* 150 Conn. 700, 190 A.2d 489 (1963).

The record reveals that there was ample evidence to show that the plaintiffs were disturbed or obstructed in the exercise of their right to use their beach easements. The contention that the impact of the public using the beach was minimal is contradicted by the defendant's own testimony. He admitted stating that "thousands have come" to the beach since he opened it; that "we had more than 500 people last year after the high school prom"; that "busloads of kids . . . pulled up one day . . . used the beach"; that if there was not enough parking, he was going to "shuttle the people from downtown Guilford" to the beach; that he had purchased the Walden Hill Road piece to provide "parking for 2000 bikes and 200 cars" for people using the beach; that his efforts to make the beach public were so successful that he boasted the beach is "open. Everybody knows. No signs are needed anymore, everybody just comes down there and uses it."

Considering the limited size of the beach, it becomes apparent that the above evidence supports the court's conclusion of irreparable injury. A beach easement is more than a mere right of access; it involves the more sensitive rights of recreational use, enjoyment and pleasure implied in the reasonable use of the easement. Thus, in *Young* v. *Scofero,* 205 Misc. 171, 127 N.Y.S.2d 196 (1954), the court enjoined a beach owner's attempt to alter physically a beach subject to lot owners' easements holding that such a change constituted an unreasonable

interference with the easement rights. Similarly, in *Levinson* v. *Costello,* 74 N.J. Super. 539, 181 A.2d 791 (1962), the court found that the issuance of general public passes to use a beach which was subject to easements of other lot owners unreasonably impaired their easements.

While it is true that title to the area between the mean low tide and mean high tide lines, covered by the daily flow of tides (the wet sand area, also called the foreshore or tideland), remains in the state; *Shorefront Park Improvement Assn.* v. *King,* 157 Conn. 249, 257, 253 A.2d 29 (1968); the fact remains that the present case does not involve public access to the wet sand area but to the privately owned dry sand area above the mean high water line.

We are not unmindful of the broader implications of public access to beaches and that General Statutes § 22a-92 (6) evinces a policy to encourage public access to the waters of Long Island Sound.[1] "As the nation's shoreline undergoes continuing development, and as public demand for access to beach recreational areas increases, the age-old problem of guaranteeing public beach access becomes ever more critical. Our beaches are disappearing, both literally, through the processes of erosion, and figuratively, behind rows of fences and 'No Trespassing, Private Beach' signs. . . . More

---

[1] Section 22a-92 provides in part: "LEGISLATIVE GOALS AND POLICIES. The following goals and policies are established by sections 22a-90 to 22a-96, inclusive: . . . (6) To encourage public access to the waters of Long Island Sound and to encourage recreational opportunities within the coastal area that are consistent with sound resource conservation procedures and constitutionally protected rights of private property owners . . . ."

detrimental to public beach recreation is the growth of private control over sand beaches." Maloney, "Public Beach Access: A Guaranteed Place to Spread Your Towel," 29 U. Fla. L. Rev. 853 (1977); see note, "Which Way to the Beach? Public Access to Beaches for Recreational Use," 29 S.C. L. Rev. 627 (1978).

Nevertheless, we must point out that while other jurisdictions have recognized public access to the dry sand beaches, they have done so on theories which do not apply to the present case. E.g., *Hay* v. *Bruno,* 344 F. Sup. 286 (D. Or. 1972) (custom theory); *Gion* v. *City of Santa Cruz,* 2 Cal. 3d 29, 465 P.2d 50 (1970) (implied dedication); *Application of Ashford,* 50 Hawaii 314, 440 P.2d 76 (1968) (boundary based upon intent of grantor); *State ex rel. Thornton* v. *Hay,* 254 Or. 584, 462 P.2d 671 (1969) (custom theory); *Seaway Co.* v. *Attorney General,* 375 S.W.2d 923 (Tex. Civ. App. 1964) (dedication and prescriptive easement); see comment, "Real Property-Doctrine of Customary Rights-Customary Public Use of Privately Owned Beach Precludes Activity of Owner Inconsistent with Public Interest," 2 Fla. St. L. Rev. 806 (1974).

Lastly, the defendant claims the court erred in concluding that his conduct in opening the beach to the public was malicious and constituted a wilful injury. Specifically, he objects to the court's taking into account activities not affecting easement rights. There was sufficient evidence, both circumstantial and direct, from which the court could reasonably have inferred that the defendant's conduct in opening the beach to the public was in reckless disregard of the plaintiffs' easement rights. Such

evidence could be gleaned not just from the named plaintiff's testimony, but also from the defendant's admissions on the witness stand.

There is no error.

In this opinion the other judges concurred.