Pauline **POIRE**, et al.

v.

Lawrence **MANCHESTER**, et al.

Supreme Judicial Court of Maine.

Argued Nov. 21, 1985.

Decided March 28, 1986.

Lowell D. Weeks (orally), North Windham, for plaintiff.

Patricia C. Coughlan (orally), Brian R. Olson, North Windham, for Lawrence Manchester.

Bernstein, Shur, Sawyer & Nelson, Joyce A. Wheeler (orally), Portland, for Scott Paper Co.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN and SCOLNIK, JJ.

SCOLNIK, Justice.

The defendant, Lawrence W. Manchester, owner and operator of the Sebago Lake Basin Campground, located in North Windham, appeals from a judgment of the Superior Court (Cumberland County) entered on an order that permanently enjoined him from allowing his business invitees to use a sand beach adjacent to Sebago Lake. The plaintiffs, Pauline Poire and fourteen other cottage owners, and the defendant own land benefited by an identical easement in common with others for the use of the beach for boating and bathing purposes. The defendant, Scott Paper Company is the record title owner of the beach.[1] On appeal, Manchester contends that the court erred in construing the language of the easement and the scope of his rights thereunder by limiting the use of his easement rights to property owners claiming through him. We affirm the judgment.

In the early 1930's, S.D. Warren Company (S.D. Warren) owned a parcel of land adjacent to Sebago Lake that included the beach. Company officials wanted to convey cottage lots on and near the beach to its employees but did not have adequate access to the proposed lots. Defendant Lawrence Manchester's father, Warren Manchester, owned a 250 acre parcel adjacent to both the lake and the S.D. Warren property but did not have either access to the beach or the right to use it. In 1935, S.D. Warren and Warren Manchester agreed to exchange deeds. By this exchange, S.D. Warren obtained a right-of-way over Manchester's land to the proposed cottage lots, and in return, granted to Manchester and "his heirs and assigns forever, The right to use in common with the grantor and others lawfully entitled thereto, the beach ... for the purposes of bathing and boating...."

At the time of the exchange, Warren Manchester operated a farm on his land. During the summer months, he allowed five families to tent near the lake for a fee, but did not operate a camping business. By 1935, the father had sold twelve lots along the lake for cottages. After the exchange, S.D. Warren sold its cottage lots to its employees and others. To each lot owner, S.D. Warren Company.

---

1. In 1969, Scott Paper Company acquired its title as a result of a merger with the former

owner the company conveyed a beach use easement identical to that in the written grant to Manchester's father. Between 1935 and 1949, no additional lots of the Manchester property were sold.[2] Between 1948 and 1958, the defendant, Lawrence Manchester, sold six lots, conveying to the purchasers an identical beach-use easement to that contained in the grant from S.D. Warren.

In 1958, Manchester started to operate on his property a commercial campground containing twenty-five camping sites. In 1961, a "gentlemen's agreement" was reached between Manchester and some of the plaintiffs, as well as the predecessors in interest of the remaining plaintiffs, in which Manchester agreed to erect and maintain a fence dividing the beach in half, one side for the campers, the other side for the cottage owners. Over the years Manchester expanded the camping facilities so that by 1984 approximately 170 sites were available for use, forty to fifty of which were occupied by families who resided seasonally at the campground.

The occupancy rate at the campground averages four campers per campsite. Accordingly, the increase in campsites has caused the beach to become overcrowded during the summer months. The total beach frontage is less than 400 feet. The beach itself is divided by a dike; the beach area north of the dike is called Basin Beach while the beach to the south is named Dike Beach. On an average summer day, approximately 100 to 150 campers use Basin Beach while only thirty to forty cottage owners make use of it. On Dike Beach, the overcrowding is not as severe nor is the comparative use as disproportionate. Of a total of forty-five to fifty-five people who utilize the beach, twenty to thirty are

campers.[3] Since there is limited public access to the shores of Sebago Lake, members of the general public make frequent use of the beach. Cottage owners find it difficult to devise a method for denying the public access to the beach because of an inability to differentiate legitimate campers from trespassers.

On May 17, 1984, Manchester removed the fence that divided the beach because, for one reason, he needed more beach area for his campers. After the fence was removed by Manchester and reerected by the plaintiffs several times, the plaintiffs commenced this action seeking *inter alia* a declaration of the rights of the parties. Following a non-jury trial, which included a view of the property in question, the Superior Court found that Manchester had overburdened the easement. Judgment was entered permanently enjoining Manchester from allowing his business invitees to use the beach thereby limiting the use of the beach to his guests, lessees and tenants. This appeal followed.

The sole issue in this case is whether the campground expansion that resulted in a larger number of individuals making use of the easement has unreasonably interfered with the use and enjoyment of the beach rights held in common by others. Each party's grant provides that his right to use the beach is one to be shared "in common with the grantor and others lawfully entitled thereto." Each easement holder's right may only be asserted to the point where its exercise does not infringe the reasonable use and enjoyment of the beach by other holders of an identical easement. *See Leabo v. Leninski*, 182 Conn. 611, 438 A.2d 1153 (1981); *Wheeler v. Lynch*, 445 A.2d 646 (D.C.1982). Accordingly, the correlative rights of the parties are deter-

---

2. In 1940, Warren Manchester died and in 1948, the defendant, Lawrence Manchester acquired title to the farm property.

3. The fence erected by Manchester was on Basin Beach. Dike Beach was also somewhat divided

over the years by an assortment of natural barriers and the physical presence of the different groups consisting of the cottage owners and campground users.

mined by applying a reasonableness test. Such a test has been applied in somewhat analogous cases involving the reciprocal rights of riparian owners to stream flowage. *See, e.g., Davis v. Getchell,* 50 Me. 602, 604–605 (1862) (Riparian proprietors have an equal right to use of water, and the right of each qualifies that of all the others; the question as between them is whether the use made by one is reasonable and consistent with a corresponding use by the rest.).

■ Instead of determining the correlative rights of the parties by analyzing the reasonableness of the use, the Superior Court employed an overburdening analysis. This was a wrong approach. While an overburdening analysis similarly utilizes a reasonableness standard, that standard is used to evaluate whether it is reasonable to conclude that a particular use was within the contemplation of the parties to the conveyance and, in that context, whether the contested use made of the servient estate by the dominant estate exceeds the rights granted to the user. *See, e.g., Barchenski v. Pion,* 9 Mass.App. 896, 402 N.E.2d 1095 (1980); *Logan v. Brodrick,* 29 Wash.App. 796, 631 P.2d 429 (1981); *Restatement of Property* §§ 482–484 (1944); *cf. Englishmans Bay Co. v. Jackson,* 340 A.2d 198, 200 (Me.1975) (whether right-of-way grant authorized vehicle as well as foot travel when contemplated use of the right of way was not expressly delineated in the deed is determined by the "objectively manifested intention of the parties in light of circumstances in existence recently prior to the execution of the conveyance"). Here, since the plaintiffs and Manchester were not parties to the conveyances but are holders of identical easements in common, the appropriate inquiry is whether the actual use made by one is reasonable in comparison with the actual use made by the others. If the use of the beach by one unreasonably interferes with the reasonable exercise of the others' rights, the latter are entitled to

relief. *Accord Leabo v. Leninski,* 182 Conn. at 615, 438 A.2d at 1155 (1981) ("The rule is well established that the owner of an easement is entitled to relief upon a showing that he will be disturbed or obstructed in the exercise of his rights."). What is a proper and reasonable use as distinguished from an unreasonable and improper use is a question of fact. *Beckwith v. Rossi,* 157 Me. 532, 536, 175 A.2d 732, 735, (1961); *Kaler v. Beaman,* 49 Me. 207, 209 (1860).

■ Although the trial justice applied an incorrect legal analysis, his unchallenged findings equally support the conclusion that Manchester's practice of allowing his business invitees to use the beach has unreasonably interfered with the plaintiffs' rights of enjoyment. There is ample evidence in the record to support this conclusion. The beach is severely overcrowded as a result of its use by the campers. Because of limitations as to beach size, hostile confrontations between the cottage owners and the campers have ensued. Boats and chairs left on or near the beach by cottage owners repeatedly are used or disturbed by campers. The cottage owners are unable to make use of the beach for boating purposes because their access to the water is obstructed. Manchester's extension of his rights to his business invitees thus has impaired the reasonable enjoyment of the common facilities by all the easement holders. Accordingly, the plaintiffs are entitled to injunctive relief.

■ Manchester raises two challenges to the injunction enjoining him from allowing his business invitees to use the beach. First, he argues that his business invitees who rent a tent space longer than twenty-eight days acquire a "property interest" and are no longer business invitees. He contends therefore that the court's limitation is unconstitutional as "a taking of property without compensation." Even assuming the defendant has standing to raise

this issue, it is deemed waived for purposes of appeal because it was not raised before the trial justice. *Reville v. Reville,* 289 A.2d 695, 697–98 (Me.1972). Similarly, since Manchester's remaining argument that the plaintiffs are estopped from obtaining any relief greater than a reinstatement of the pre-existing fence was not raised before the trial justice, we do not consider it on appeal.[4] *Graybar Elec. Co. v. Sawyer,* 485 A.2d 1384, 1388 (Me.1985).

The entry is:

Judgment affirmed.

All concurring.

---

**4.** We do not interpret the injunction to be directed toward any future grantee of the defendant Manchester and we therefore intimate no opinion as to the rights of such grantee.