HERBERT J. STIEFEL ET AL. *v.* GEORGE L. LINDEMANN ET AL.

BELLE TERRE ASSOCIATES ET AL. *v.* GEORGE L. LINDEMANN ET AL.

(11827)
(11834)

DUPONT, C. J., O'CONNELL and FOTI, Js.

Argued November 2, 1993--decision released March 22, 1994

*Robert M. Davison,* with whom, on the brief, was *Howard B. Naylor,* for the appellant (plaintiff Steven Grossman).

*Douglas R. Steinmetz,* with whom, on the brief, was *Stephen J. Curley,* for the appellant (plaintiff Elizabeth G. Dubois).

*Steven R. Humphrey,* with whom were *Roger J. Pearson* and, on the brief, *Bram S. Lehman,* for the appellees (defendants).

DUPONT, C. J. In these appeals from the judgments that followed two actions tried to the court, the primary questions to be resolved are whether the defendants have an easement (1) over land of the plaintiff Steven Grossman,[1] and (2) over the land of Elizabeth G. Dubois. The resolution of the first question is dependent on the interpretation of a reservation of a right-of-way in a deed from the predecessor in title of the defendants to a predecessor in title of Grossman, or on whether, if the deed is ineffective, an easement by prescription exists in favor of the defendants. In both actions, the plaintiff seeks injunctive relief and damages, claiming that the defendants are prohibited from using a driveway that crosses his land and terminates on Indian Field Road, a public highway in the town of Greenwich. Dubois, as the owner of property adjacent to the land of the plaintiff, was joined as a party to the actions. Dubois filed a complaint against the defendants, George L. and Frayda Lindemann, alleging that the Lindemanns have no right-of-way over that portion of the driveway that lies on the Dubois land. She also sought injunctive relief and damages against the Lindemanns.

---

[1] Belle Terre Associates, the named plaintiff, conveyed title to Grossman after the commencement of the action. The term plaintiff as used in this decision refers to Grossman, he being the only plaintiff involved in the appeals of both actions.

The defendants in both cases are George L. and Frayda Lindemann.

In both actions, the defendants, by way of two special defenses, claim that they have a right-of-way by virtue of an express grant by deed, and, in the alternative, by virtue "of adverse possession, prescriptive easement and easement by necessity." The trial court rendered judgment for the defendants on the first special defense, after an extensive discussion of the deeds in the parties' chains of title, and on their second special defense. The court also rendered judgment for the defendants on Dubois' complaint. The plaintiff and Dubois have filed separate appeals.

Three properties are involved in these appeals, all situated in the Mead's Point section of Greenwich. The defendants own property known as the Lindemann estate, and claim they have rights-of-way over two other properties described in the appeals as lot 3, now owned by the plaintiff, and the Dubois property.[2]

The Lindemann estate is a 9.7 acre parcel that is bounded by Long Island Sound on the east and by Indian Field Road on the west. Lot 3 is situated north of the Lindemann estate and is bounded by Long Island Sound on the east. Lot 3 is not situated directly on Indian Field Road, but has access to the road by crossing property described as lot 1. Lot 1 runs from the northwestern tip of lot 3 to Indian Field Road. The Dubois property is north of lots 1 and 3, and is bounded by Long Island Sound on the east and by Indian Field Road on the west.

---

[2] The plaintiffs in *Stiefel* v. *Lindemann,* were Herbert and Lucy Stiefel, former owners of lot 3, and Grossman, the present owner of lot 3. The Stiefels did not appeal from the judgment for the defendants and are not involved in these appeals. The plaintiffs in *Belle Terre Associates* v. *Lindemann* were the named plaintiff and Grossman, and Milton and Myra Schubin, the owners of property known as lots 1 and 2. The Schubins withdrew from the case after they conveyed an easement for foot and vehicular traffic over lot 1 to the defendants. This appeal, therefore, concerns only the claimed right-of-way over lot 3 and the Dubois property.

The driveway in issue proceeds north from the Lindemann estate over the western boundary of lot 3. As it nears the northwest corner of lot 3, it curves until it is proceeding west over the northwestern section of lot 3 and the southern boundary of the Dubois property. After reaching the western boundary of lot 3, the driveway continues over the northern boundary of lot 1 and the southern boundary of the Dubois property until it reaches Indian Field Road.

The trial court found that the easements establishing the driveway over lot 3 and the Dubois property were appurtenant easements created in favor of the Lindemann property. As a result, the court concluded that the easements ran with the land to bind the subsequent owners of lot 3 and the Dubois property. The trial court also found that the easements over lot 3 and the Dubois property were created by separate warranty deeds. We will consider the easements over lot 3 and the Dubois property in turn.

I

In 1966, John and Carolyn Otto acquired both lot 3 and the Lindemann estate. In 1971, they conveyed lot 3 to Pamela Coyne by warranty deed (Otto-Coyne deed). The deed contained the following provision: "Grantors herein reserve a right of way for their remaining property over the existing driveway for all lawful purposes of travel and for connecting with any utilities which may be located thereon." The executors of Coyne's estate conveyed lot 3 to Herbert and Lucy Stiefel in 1976. The deed to the Stiefels stated that the conveyance was subject to the right-of-way reserved in the Otto-Coyne deed.[3] In 1988, the Stiefels conveyed lot 3 to Louis Grossman, who conveyed the property to Belle Terre Associates, which conveyed the property to the plaintiff Steven Grossman. These deeds all stated that the conveyance was subject to the right-of-way reserved in the Otto-Coyne deed.

The Ottos used the existing driveway, albeit somewhat infrequently, over lot 3 until they conveyed their remaining property, the Lindemann estate, to Frayda and Carol Lindemann in 1982. The deed stated that the

[3] The Coyne to Stiefel deed also stated that the conveyance was subject to the "[r]ights of others in and to the northerly 13 feet of said premises formerly comprising a portion of the private road running easterly from Indian Field Road to Long Island Sound."

conveyance included "all right, title and interest reserved" in the Otto-Coyne deed. In 1987, Frayda and Carol Lindemann conveyed the property by deed to the defendants, George and Frayda Lindemann. The deed stated that the conveyance included the right-of-way over lot 3.

The trial court found that the driveway over lot 3 was used primarily as a service entrance by the Lindemann estate without interruption until 1985, when a chain link fence was installed across the driveway at roughly the boundary line of lot 3 and the Lindemann estate. The Stiefels then planted grass and shrubbery on their side of the fence.

The plaintiff claims that the trial court improperly found that the right-of-way over lot 3 was an appurtenant easement. The plaintiff contends that the right-of-way was personal to the grantors and did not run with the land because the reservation of the right-of-way in the deed lacked words of inheritance and assignment. He also claims that the defendants do not have a prescriptive easement over lot 3.

The primary issue is whether the right-of-way over lot 3 is appurtenant or in gross. The question of whether an easement is appurtenant or in gross[4] is resolved by ascertaining the intent of the parties as expressed in

---

[4] "An easement in gross belongs to the owner of it apart from his ownership or possession of any specific land and, in contrast to an easement appurtenant, its ownership is personal to its owners. . . . If the easement is in its nature an appropriate and useful adjunct to the land conveyed, with nothing to show that the parties intended it to be a mere personal right, then it is an easement appurtenant. . . . An easement appurtenant must have a dominant estate that enjoys the benefit of the right-of-way and a servient estate that bears the burden. Such an easement can become legally attached to the dominant estate only if the same person owns both the right-of-way and the dominant estate. . . . While an easement appurtenant must be of benefit to the dominant estate, the servient estate need not be adjacent to the dominant estate." (Citations omitted.) *Dean* v. *Riley*, 31 Conn. App. 87, 90–91, 623 A.2d 521 (1993).

the deed. *Leabo* v. *Leninski,* 182 Conn. 611, 614, 438 A.2d 1153 (1981); *Dunn Bros., Inc.* v. *Lesnewsky,* 164 Conn. 331, 335, 321 A.2d 453 (1973); *Dean* v. *Riley,* 31 Conn. App. 87, 90, 623 A.2d 521 (1993). This intent is determined by considering the language and the relevant provisions of the deed in light of the then existing situation of the property and the current surrounding circumstances. *Lago* v. *Guerrette,* 219 Conn. 262, 267, 592 A.2d 939 (1991); *Leabo* v. *Leninski,* supra; *Dunn Bros., Inc.* v. *Lesnewsky,* supra; *Dean* v. *Riley,* supra. The determination of the intent expressed in a deed presents a question of law. *Carbone* v. *Vigliotti,* 222 Conn. 216, 222, 610 A.2d 565 (1992). Thus, our review of the trial court's conclusions as to intent is plenary, and does not require deference to the trial court's factual findings.[5] Id.

It is well established that where the reservation creating an easement does not mention the heirs and assigns of the grantee, a presumption exists that the grantor and grantee intended the right-of-way to be in gross. *Kelly* v. *Ivler,* 187 Conn. 31, 39, 450 A.2d 817 (1982); *Leabo* v. *Leninski,* supra, 614; *Dunn Bros., Inc.* v. *Lesnewsky,* supra, 335. The presumption, however, is rebuttable. *Kelly* v. *Ivler,* supra; *Leabo* v. *Leninski,* supra; *Dunn Bros., Inc.* v. *Lesnewsky,* supra. The reservation will be interpreted as creating an appurtenant easement if it appears, from the surrounding circumstances and other relevant provisions in the deed, that the parties intended the easement to run with the land. *Kelly* v. *Ivler,* supra; *Leabo* v. *Leninski,* supra; *Dunn Bros., Inc.* v. *Lesnewsky,* supra. Several factors may

---

[5] Although appellate review of a trial court's conclusion as to intent is plenary, deference may be given to a trial court's subsidiary findings of fact relating to the credibility of creators of easements as to their intent. *Dean* v. *Riley,* 31 Conn. App. 87, 93, 623 A.2d 521 (1993). In the present case, the credibility of the creators of the easement, the Ottos, is not involved in any factual finding.

rebut the presumption. They are (1) whether the language of the reservation indicates that the easement is intended to run with the land, (2) whether the easement is of value to the dominant estate itself, and (3) whether the owner of the servient estate recognized the right of the subsequent owners of the dominant estate to use the easement. *Kelly* v. *Ivler,* supra, 43–44; *Leabo* v. *Leninski,* supra, 614–15; *Dunn Bros., Inc.* v. *Lesnewsky,* supra, 335–36.

In this case, the easement is presumed to be in gross because the reservation in the Otto-Coyne deed does not use the language "heirs and assigns." After considering the language of the reservation and the other relevant provisions of the deed in light of the surrounding circumstances, we conclude that the presumption has not been rebutted.

The language of the deed expressed an intent to create an easement in gross. The reservation not only lacked words of inheritance, it also lacked the terms "appurtenant" and "runs with the land," which have been recognized as expressions of an intent to create an easement appurtenant. See *Kelly* v. *Ivler,* supra, 44; *Dunn Bros., Inc.* v. *Lesnewsky,* supra, 336. In fact, the reservation used language indicating that the easement was personal. The reservation stated that the right-of-way was reserved for the "grantors *herein*" (emphasis added), which indicates that the reservation was in favor of the particular grantors of the conveyance.[6] See *Kowalski* v. *Mather,* 112 Conn. 594, 594–95, 153 A. 168 (1931). The reservation also uses the personal pronoun "their" in stating that the grantors reserved the right-of-way in favor of "*their* remaining property." (Emphasis added.)

---

[6] According to Merriam-Webster's Collegiate Dictionary (10th Ed. 1993), "herein" means "in this."

In this case, the reservation was part of paragraph thirteen of the "subject to" section of the deed. In that paragraph, the grantors also reserved a conditional right to repurchase lot 3, as long as they owned property adjoining lot 3. That reservation referred to the "Grantors herein" and the "Grantee, her heirs and assigns." Thus, it can be inferred that the grantor and grantee used "herein" language when they intended a reservation to be personal, but used "heirs and assigns" language when they intended a reservation to run with the land. This is further demonstrated by paragraph twelve of the "subject to" section, which stated that a restriction regarding laundry and drying areas "run[s] with the land" to bind "the Grantee, her heirs and assigns."[7]

In regard to the factor of value, we consider whether the easement enhances and will continue to enhance the value of the claimed dominant estate, rather than merely conveniencing the grantor. *Leabo* v. *Leninski,* supra, 615; *Dunn Bros., Inc.* v. *Lesnewsky,* supra, 335. One consideration in this determination is whether the easement was the sole means of access to the estate to be benefited at the time of the reservation. See *Birdsey* v. *Kosienski,* 140 Conn. 403, 410–11, 101 A.2d 274 (1953); *Knowlton* v. *New York, N.H. & H. R. Co.,* 72 Conn. 188, 192–93, 44 A. 8 (1899); see also *Kelly* v. *Ivler,* supra, 43. Although the easement in this case had some value to the Otto property, now the Lindemann property, because the right-of-way served as a service entrance, it was not the only means of access to the

---

[7] The defendants claim that a direct comparison of the reservations in the deed is unconvincing, and they cite *Dunn Bros., Inc.* v. *Lesnewsky,* 164 Conn. 331, 336, 321 A.2d 453 (1973), for this proposition. In that case, a direct comparison of the language used was not conclusive where the words of inheritance were used in one clause but not in another because other language and circumstances outweighed the lack of words of inheritance, including the fact that the disputed clause contained the expression "for and as an appurtenance to . . . ." Id.

buildings on the property. Nor is the right-of-way necessary for access to Long Island Sound, which would enhance the value of the property; see *Kelly* v. *Ivler,* supra; as the defendants have frontage on and access to the sound. Thus, we conclude that the easement was of limited value.

A third factor in determining whether the presumption is rebutted is whether the *owner* of the estate to be burdened recognized that subsequent *owners* of the estate to be benefited would have a right to exercise the easement. Id. Here, Pamela Coyne was the owner of lot 3 from 1971 until the executors of her estate conveyed it to the Stiefels in 1976. Coyne recognized the right of the Ottos to use the right-of-way, as did her successors in title until the Ottos conveyed their property to the defendants in 1982. Because Coyne died before the Ottos conveyed their property to the defendants, there could be no evidence that she, as the owner of the estate to be burdened, recognized the right of the successors in title to the Ottos to use the right-of-way.

After reviewing the relevant factors, we conclude that the presumption that the reservation creating an easement without mention of heirs and assigns was intended to be in gross has not been rebutted. A presumption is equivalent to prima facie proof of its validity. *Anderson* v. *Litchfield,* 4 Conn. App. 24, 28, 492 A.2d 210 (1985). Because the presumption was not rebutted, we hold that the defendants do not have an easement over the plaintiff Grossman's land.

The trial court also concluded that judgment should enter for the defendants on their special defense of acquisition of an easement by prescription, but did not discuss the issue separately and made no separate findings of fact as to it. In discussing the first special defense, the acquisition of the easement by deed, how-

ever, the trial court stated some facts that are relevant to whether an easement by prescription or by necessity was created.

To acquire an easement by prescription, the use of the property must be adverse. General Statutes § 47-37; *Westchester* v. *Greenwich,* 227 Conn. 495, 501, 629 A.2d 1084 (1993). In order to prove adverse use, the party claiming to have acquired the easement must demonstrate that the use of the property has been " 'open, visible, continuous and uninterrupted for fifteen years and made under a claim of right.' " *Westchester* v. *Greenwich,* supra; *Klar Crest Realty, Inc.* v. *Rajon Realty Corp.,* 190 Conn. 163, 168, 459 A.2d 1021 (1983).[8]

A claim of right exists only if the user does not recognize the right of the owner of the servient tenement to prevent the use. *Westchester* v. *Greenwich,* supra; *Klar Crest Realty, Inc.* v. *Rajon Realty Corp.,* supra. When the user has permission from the servient owner to use the property, the use is not prescriptive because the user has notice of the owner's right to terminate the use. *Klar Crest Realty, Inc.* v. *Rajon Realty Corp.,* supra. However, " '[w]here the use began as the result of an ineffective or invalid grant, that fact does not negate its adverse character but tends rather to emphasize that it was made under a claim of right.' " Id., 169; see also *Schulz* v. *Syvertsen,* 219 Conn. 81, 91, 591 A.2d 804 (1991).

The prescriptive period does not begin to run if the dominant and servient estates are under the same

---

[8] Although the party claiming an easement by prescription bears the burden of proof, "[a]ll that is required is a showing by a fair preponderance of the evidence that the use was adverse." *Reynolds* v. *Soffer,* 190 Conn. 184, 188, 459 A.2d 1027 (1983); see also *Schulz* v. *Syvertsen,* 219 Conn. 81, 91, 591 A.2d 804 (1991).

ownership. *Whiting* v. *Gaylord,* 66 Conn. 337, 344, 34 A. 85 (1895). Once the prescriptive use begins, the use must continue without interruption for fifteen years. *Westchester* v. *Greenwich,* supra; *Klar Crest Realty, Inc.* v. *Rajon Realty Corp.,* supra, 168. The owner of the servient land over which the right-of-way is used may interrupt the use by committing an act that breaks its continuity. 25 Am. Jur. 2d, Easements and Licenses § 57 (1966); cf. *South Norwalk Lodge* v. *Palco Hats, Inc.,* 140 Conn. 370, 374, 100 A.2d 735 (1953).

In this case, the Ottos owned both the dominant and servient estates—the Lindemann property and lot 3, respectively—until 1971 when they conveyed lot 3 to Coyne. The Otto-Coyne deed, while failing to create an appurtenant easement, established a claim of right in 1971. The trial court found, however, that a fence was constructed across the entrance of the right-of-way in 1985. After the installation of the fence, the Steifels, the owners of the servient estate at that time, planted grass and shrubbery on their side of the fence. Because the fence and plantings interfered with the use of the easement before the statutory period of fifteen years was satisfied; General Statutes § 47-37; *Klar Crest Realty, Inc.* v. *Rajon Realty Corp.,* supra; the defendants could not have acquired a prescriptive easement over lot 3.[9] The defendants' special defense also claims an easement by necessity. Since the trial court also found that the Lindemann property has another means of access to a public road, there could be no easement by necessity. See *Hollywyle Assn., Inc.* v. *Hollister,* 164 Conn. 389, 398–402, 324 A.2d 247 (1973).

[9] In regard to lot 3, there is evidence that the right-of-way over lot 3 was used from 1951 to 1966. Thus, it is possible that this use established a prescriptive easement. Any such easement was extinguished, however, when the Ottos purchased both the dominant and servient estates—the Lindemann property and lot 3, respectively. *Blanchard* v. *Maxson,* 84 Conn. 429, 434, 80 A. 206 (1911); see also 25 Am. Jur. 2d, Easements and Licenses § 108 (1966).

## II

Prior to October 10, 1906, William Wood owned the Dubois property and the land that now comprises lots 1, 2, and 3, and the Lindemann estate. In 1906, Wood conveyed the Dubois property to W. Templeton Johnson (Wood-Johnson deed). The deed conveying the property contained a provision that reserved, in favor of Wood and his heirs and grantees, "the right to use said private roads or driftways for any purpose for which [Wood] can now use the same." The deed's property description indicated that the southern boundary line ran along the center line of a twenty-six foot "private road or driftway." In 1916, Johnson and his wife, Clara Sturges Johnson, conveyed the Dubois property to Helen Sturges Dubois. The deed did not mention the 1906 reservation, but the deed's property description contained the same description regarding the southern boundary line as did the 1906 deed. After the property passed by will to Elizabeth Gibson Dubois, she conveyed the property to herself and J. Delafield Dubois in 1959. The deed did not mention the 1906 reservation, but the property description indicated that the southern boundary line of the property ran along the center line of a private road.

Prior to November 9, 1951, Hans Tobeason owned the land that now comprises lots 1, 2, and 3, and the Lindemann estate (Tobeason property). In 1951, Tobeason conveyed lots 1, 2, and 3. In 1954, Tobeason conveyed the Lindemann estate to Raymond Marshall. The deed conveyed the property together with "all rights and interest in and to the private roads or driftways leading to or adjoining" the Lindemann estate. In 1966, Marshall conveyed the Lindemann estate to John and Carolyn Otto. The deed conveyed the property together with "all rights and interest in and to the private roads and driftways leading to or adjoining" the Lindemann

estate. In 1982, the Ottos conveyed the Lindemann estate to Frayda and Carol Lindemann. The deed conveyed the property together with "all rights and interest in and to the private roads, driveways and driftways leading to or adjoining" the property. Frayda and Carol Lindemann, as trustees, conveyed the property to the defendants, George and Frayda Lindemann, in 1987.

The trial court found the defendants acquired a right-of-way over the Dubois property by an unbroken chain of title from Wood, and that the defendants had also acquired it by prescription. Dubois disputes these conclusions. It is a well established principle that where an easement is appurtenant to any part of a dominant estate, and the estate is subsequently divided into parcels, each parcel may use the easement as long as the easement is applicable to the new parcel, and provided the easement can be used by the parcels without additional burden to the servient estate. *Phoenix National Bank* v. *United States Security Trust Co.*, 100 Conn. 622, 630, 124 A. 540 (1924). An easement is applicable to the new subdivision (1) if the easement directly abuts on the new parcel, or (2) if the owner of the new parcel can reach the easement by traveling over intervening land over which the owner has a legal right of passage. Id., 634.

In this case, the Wood-Johnson deed reserved an appurtenant easement over the Dubois property in favor of the Tobeason property, the land that now comprises lots 1, 2, and 3, and the Lindemann estate. Due to the division of the land into four lots, the Lindemann estate is not adjacent to the Dubois property. Since the Lindemann estate does not abut the Dubois property, the Dubois right-of-way can be applicable to the Lindemann estate only if the owners of the Lindemann estate have a legal right of passage over the intervening land. The defendants cannot access the Dubois right-of-way without traveling over both lot 1 and lot 3.

Although the defendants have a right to travel over lot 1, they have no right to travel over lot 3, as indicated by our previous analysis. We conclude, therefore, that, as a matter of law, the defendants do not have an express right to use the Dubois right-of-way.

We also conclude that the defendants did not acquire an easement by prescription over the Dubois property. A fence and plantings prevented access across lot 3 and, therefore, across the Dubois property as well because without access to lot 3, that portion of the right-of-way on the Dubois property could not be reached. As a result, the use over the Dubois property was not uninterrupted for the prescriptive period. General Statutes § 47-37; *Klar Crest Realty, Inc.* v. *Rajon Realty Corp.*, supra.

The plaintiff and Dubois sought damages as well as injunctive relief. They do not argue in their brief, however, that, in the event we reverse the trial court, damages are due, nor do they seek any particular relief, other than a reversal of the trial court's conclusions of law that the defendants have a right-of-way over their land by deed or prescription. "Some damage necessarily follows any wrongful invasion of another's property . . . but it is nominal as distinguished from any specific damage suffered or proved. . . . [S]ome damage results from the mere invasion of the plaintiff's property rights, and its amount, not being determinable by proof, must be comparatively small and in that sense nominal. . . . As a general rule, however, this court will not reverse and grant a new trial for the mere failure to award nominal damages." (Citation omitted.) *Matto* v. *Dan Beard, Inc.*, 15 Conn. App. 458, 489, 546 A.2d 854 (1988); see also *Kelley* v. *Montesi*, 14 Conn. App. 104, 107, 539 A.2d 1020 (1988). The trial court in this case did not reach the question of damages because it rendered judgment for the defendants. Since the plaintiff and Dubois are not entitled to other

than nominal damages, no further action in the trial court is necessary. *Matto* v. *Dan Beard, Inc.,* supra; *Kelley* v. *Montesi,* supra.

The judgments are set aside and the case is remanded with direction to render judgments of injunctive relief prohibiting the defendants from using any portion of lot 3 or the Dubois property.

In this opinion the other judges concurred.