[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
 NATURE OF THE CASE
CT Page 5527
The plaintiffs commenced this action seeking injunctive relief against the defendants for interfering with their use and possession of a parcel of land, "Parcel C", located in the town of Branford. The plaintiffs' claim to Parcel C is premised on a prescriptive use and adverse possession.
The defendants deny the plaintiffs have acquired any prescriptive rights to this parcel to which the defendants hold title. They have counterclaimed, seeking to enjoin the plaintiffs from interfering with their use of Parcel C and from parking on portions of a ten foot right-of-way which services property of all the parties and others owning adjacent real estate.
 II FACTS
Parcel C is actually the rear portion of the defendants' parcel. The ten foot right-of-way is also a portion of the defendants' property, running northerly along its westerly boundary and then running northeasterly to serve as ingress and egress for the plaintiffs' property and other interior parcels.
Until 1970, the properties now owned by the parties were owned by one Jennie Lyons. By deed dated October 2, 1970, the plaintiffs acquired title to the bulk of their present holdings. This parcel included two cottages, the "Wallace" and the "Ridgewood."
On July 2, 1976, the plaintiffs acquired the balance of their present holdings from Jennie Lyons, a small irregularly shaped parcel acquired for parking.
Between 1970 and 1976, the plaintiffs parked their vehicles between the two cottages and on the second parcel acquired from Jennie Lyons. During this period, the buildings were basically utilized for summer residences only. Between 1973 and 1976, the plaintiffs would entertain student groups on the premises, usually in the off-season. Activity in the area varied with the seasons and consequently the need for parking varied accordingly.
Following the second acquisition from Jennie Lyons, the plaintiffs converted the area adjacent to their house (Ridgewood) to a garden and entranceway. Parking was now limited to the second parcel and to portions of the right-of-way. The use of Parcel C CT Page 5528 will be discussed below, as part of the court's treatment of the conflicting claims.
It is the plaintiffs' claim that they started in 1970 to use Parcel C to reach their own property and then to park on the second parcel and that they also parked on Parcel C. It is undisputed that there were no clearly marked boundaries or markers delineating any of these parcels or the right-of-way. However, in the spring of 1993, the defendants placed a row of timbers from the corner of their property to the border of the right-of-way and parked cars so as to block the use and crossing of Parcel C.
 III
A prescriptive period does not begin to run while the dominant and servient estates are under the same ownership. Whiting v.Gaylord, 66 Conn. 337, 344 (1985). This, the earliest possible beginning point for the plaintiffs' prescriptive use would be October 2, 1970. That use would have to be open, visible, continuous and uninterrupted for fifteen years and made under a claim of right.
"A claim of right exists only if the user does not recognize the right of the owner of the servient tenement to prevent the use." Stiefel v. Lindemann, 33 Conn. App. 799, 810 (1994). Citations omitted.
In describing his acquisition of the second parcel from Jennie Lyons, the plaintiff Reinhold Hekeler testified that he knew he did not own the land on which he was parking and decided to approach the owner to see about acquiring it. It was then that Jennie Lyons agreed to convey it to him without charge. He then planted the former parking area and converted it to an entranceway. Up to the time of that second acquisition, Mr. Hekeler was aware that he had no right to the property and that Jennie Lyons could have terminated his use of it.
On cross examination, Mr. Hekeler stated that if Mrs. Lyons had asked him, he'd have moved any car he had parked or caused to park on Parcel C. It necessarily follows that her power to terminate continued until her death in 1979. Since the defendants effectively blocked the access to and use of Parcel D in March of 1993, and filed a notice, pursuant to Sec. 47-38 in December of 1993, there has been no satisfaction by the plaintiffs of the fifteen year period of adverse use "under a claim of right." CT Page 5529
On this basis alone the plaintiffs' claim must fail.
 IV
An examination of the testimony elicited in this case reveals further deficiencies in the plaintiffs' proof. This is evident with respect to the nature of the use on which the plaintiffs rely for the period commencing July 1976.
Mr. Hekeler testified that no use was made of Parcel C until after 1976, but that until the defendants contested this use in 1993, the plaintiffs "had a car on Parcel C, a car at the house, and drove across C to get there" (to the parking space at the house). He went on to say that he never would have thought about parking on this land if any of the owners subsequent to Mrs. Lyons (i.d., Mr. Bruno, Mr. Raucci, Mr. Gronback and Mr. Nathanson) told him he could not!
While this testimony lends further support to the defendants' claim that the plaintiffs' use was not "under a claim of right," it also supports the conclusion that the use itself was permissive. That is, the plaintiffs felt they were proceeding with thepermission of the owners, a recognition that the use was not adverse to these owners.
Support for this view is found in the testimony of Mr. Hekeler that no one ever complained about the parking and that "we were accommodating and would move cars" (if someone was blocked or needed access).
The permissive nature of this parking and its extent is further illustrated by the testimony of Richard Parker. He indicated that when the student groups met at the plaintiffs' cottage, they parked wherever they could. They would leave the keys in the cars and cars would be moved as necessary. Cars were "all over the place," including the use of premises owned by neighbors of the plaintiffs.
Evidence introduced by the plaintiffs also indicates that the plaintiffs have utilized two portions of the right-of-way for the parking of cars.
It is undisputed that the parking situation varied with the seasons, being more difficult on summer weekends than on weekdays CT Page 5530 and only becoming a problem on the off-season when the student groups arrived, each student driving a car.
The testimony of an adjacent property owner, Mr. Savastano, is significant in that he described the parking situation in question as "typical of any shore area." On occasion, he saw cars parked on Parcel C. While he was able to recognize vehicles driven by the plaintiffs, he did not know who owned all the cars he saw parked on Parcel C.
Ann Tasmer, co-owner of property adjoining the plaintiffs' parcel, and a long time resident of the area, testified that the right-of-way and the areas not built upon were one open area and cars were parked where there was space by all visitors to all the property owners. People other than the plaintiffs parked on Parcel C, and parking on C was occasional. Cars were parked on her property and on the end of the right-of-way.
The testimony of Wilbur Tasmer is relevant to several issues in the case, but on the nature of the plaintiffs' use and the parking pattern he noted that the parking problem in the area in question worsened when a nearby lot was built upon. He also recalled Mr. Hekeler moving cars to open access to the Tasmer property and moving cars from other areas. He dates the plaintiffs' use of Parcel C to the mid 1980's when the plaintiffs' children got cars. He also stated that the use of Parcel C as a community parking area started after Mr. Gronback sold what is now the defendants' property in 1980.
Even the plaintiffs concede the significance of the way the various cars were parked and moved when requested. Referring to a situation where "the off-loading of trucks at the plaintiffs' premises, always with only one exception, moved upon request, evidencing a permissive rather than adverse use, . . .", (Page 26), the plaintiffs state:
 "Constant moving of vehicle standing in a driveway upon request by the owners thereof to permit other vehicles to pass would, if proven, establish the character of the claimant's use as permissive rather than adverse under a claim of right. Sachs v. Toquet, supra at 25." (Actually this is from page 65). CT Page 5531
 "A use by express or implied permission or license cannot ripen into an easement by prescription. Phillips v. Bonadies, 105 Conn. 722, 725, 726, 136 A. 684; Jones, Easements § 282; 2 Tiffany, Real Property (2d Ed.) § 519. Where there is neither proof of an express license or permission from the landowner, nor of an express claim of right by the person using the way, the character of the use, whether adverse or permissive, is to be determined from the circumstances of the parties and the nature and character of the use. Phillips v. Bonadies, supra, p. 727."
Sachs v. Toquet, 121 Conn. 60, 66 (1936).
The court has only highlighted the substantial evidence relating to the nature of the plaintiffs' use and relationship with the area and other property owners. The court finds it significant that even Jennie Lyons was on such friendly terms with the plaintiffs that she gave him a piece of property to solve his parking concerns. Her successor in title, Mr. Gronback gave Mr. Hekeler a right of first refusal, without consideration, to the property now owned by the defendants.
 V
The plaintiffs have the burden of demonstrating that their adverse use was open, visible, continuous and uninterrupted for fifteen years.
 "The owner of the servient land over which the right-of-way is used may interrupt the use by committing an act that breaks its continuity. 25 Am.Jur.2d, Easements and Licenses § 57; cf. South Norwalk Lodge v. Palco Hats, Inc., 140 Conn. 370, 374, 100 A.2d 735 (1953)."
Stiefel v. Lindemann, supra, at 811.
The evidence in this trial was replete with episodes and examples of interruptions of the plaintiffs' alleged adverse use.
Mr. Hekeler testified that in 1989 when work was being done on what in now the defendants' property, the builder ordered him out CT Page 5532 of Parcel C. He complied and asked that the owner speak to him.
Mr. Gronback owned the "Ortega," the defendants' property, and in his deposition testified that he and his wife inherited the property in 1979 and sold it in 1984. He stated he used Parcel C when he had "an overflow of company" and sometimes parked a utility trailer and a four wheel drive utility trailer on the property. He also related that if neighbors parked cars on Parcel C he would ask them to remove them and they respected his request. He was aware of the plaintiffs parking on this parcel and driving across it.
Mr. Gronback also described a fence Mr. Hekeler erected along Parcel C and which he removed. When Mr. Hekeler put it back up, he advised Mr. Hekeler to remove it and not to put anything on his property. It was not replaced. Mr. Gronback was also unaware that the plaintiffs were using Parcel C so as to disregard his property rights and would have erected "No Trespassing" signs had he realized this.
Finally, Mr. Tasmer's observations are helpful in evaluating this use and its extent. As noted above, he disagrees with the plaintiffs' claims as to Parcel C and states it was not used for parking until the mid 1980's. He recalled Mr. Gronback's use of the parcel and noted that he placed 2 x 4's next to his trailer to keep cars off and to reserve spaces for company and his own cars.
From this evidence the Court concludes that the alleged adverse use was not continuous and uninterrupted for fifteen years.
 VI
The defendants urge the court to deny the plaintiffs' claim to a prescriptive easement on the grounds that the claim is not reasonable, citing Aksomitas v. South End Realty Co., 136 Conn. 277,281 (1949).
The easement is claimed over Parcel C, the rear portion of the defendants' property. It contains 325 square feet. The defendants' entire available area to the rear of their property is 680 square feet. If the plaintiffs are successful, the defendants would be left with no area on which to park unless they removed the deck occupying the 355 square feet between the dwelling and Parcel C. The "taking" would be almost 50% of the total area available.
The defendants rely on a decision by Judge Satter in Camp v.CT Page 5533Grossman, #091034, Court of Common Pleas at New Haven, May 8, 1978. The Court finds that decision persuasive. It involved an attempt to appropriate about 50% of the lawn behind the defendant's house.
The Court finds the plaintiffs' attempted prescriptive annexation by fee and/or easement to be unreasonable.
 VII
Counsel have addressed the issue of the standard of proof required of the plaintiffs. The plaintiffs' claim adverse possession of Parcel C as well as a prescriptive easement over it. The Court finds that they have failed to prove their case for an easement by a fair preponderance of the evidence, hence their claim for adverse possession necessarily fails to meet the clear and convincing evidence standard.
 VIII
The plaintiffs offered evidence to the effect that they have utilized portions of the ten foot right-of-way to park cars. This is contrary to the deed terms creating the right-of-way.
The defendants by way of counterclaim ask that the plaintiffs be restrained from using the right-of-way for parking or otherwise interfering with the rights of other beneficiaries.
The Court finds for the defendants on their counterclaim.
CONCLUSION
The plaintiffs' application for an injunction is denied and judgment may enter for the defendants on the complaint.
The plaintiffs are further ordered to cease and desist from utilizing the right-of-way for parking or other purposes which are contrary to the terms creating said right-of-way.
Counsel for the defendants may submit such proposed orders as are necessary to accomplish the purposes of this decision.
The defendants are entitled to taxable costs.
Anthony V. DeMayo State Trial Referee CT Page 5534