******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RUSSELL JORDAN ET AL. *v.*
JON D. BILLER ET AL.
(AC 40314)

Keller, Prescott and Bright, Js.

*Syllabus*

The plaintiffs sought to recover damages for, inter alia, trespass, in connection with an incident in which the defendants removed approximately eighty trees from the plaintiffs' property in an area of a direct sight line from the defendants' house to the water. Pursuant to a previously executed license and view easement that had been granted to previous owners of the defendants' property, permission from the plaintiffs was required before any trees could be thinned or cut down. The defendants, who did not request permission form the plaintiff before cutting down the trees, claimed that they enjoyed the benefits of an appurtenant view easement over the plaintiffs' property, which gave them the right to cut down the trees. Following a trial to the court, the trial court rendered judgment in favor of the plaintiffs, concluding that the view easement granted to previous owners of the defendants' property was a right personal to them and did not run with the land, such that the defendants did not enjoy a view easement over the plaintiffs' property. On the defendants' appeal to this court, *held*:

1. The trial court properly determined that the view easement granted to the previous owners of the defendants' property was a right personal to them and did not run with the land; the view easement does not expressly convey rights to heirs and assigns of the grantee, which created a presumption that the easement was personal to the previous owners to which it was granted and not appurtenant to the subject property, and given that the defendants did not provide a basis to conclude that the view easement had such sufficient value to demonstrate that it was intended to run with the land, as it was not shown that the view easement enhanced the value of the defendants' property by adding any monetary value, that there was a lack of historical usage of the easement, and that the intent of the parties expressed in the language of a bond for deed and license and view easement evidenced only a personal right instead of an appurtenant easement that was intended to run with the land, the defendants did not overcome the presumption that the view easement was not appurtenant.

2. Because the defendants' claim that the trial court erred in awarding the plaintiffs damages was predicated on their claim that they enjoyed the rights to the view easement, and because this court determined that the view easement was not appurtenant, the defendants' claim failed; moreover, even if the defendants enjoyed the rights of an easement appurtenant, they needed to obtain the plaintiffs' permission before cutting down or trimming any trees, which they failed to do, and, thus, their failure to obtain such permission provided further support for the court's award of damages.

Argued May 16—officially released September 18, 2018

*Procedural History*

Action to recover damages for, inter alia, trespass, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *Brazzel-Massaro, J.*, granted the plaintiffs' motion to transfer to the judicial district of Middlesex; thereafter, the court, *Aurigemma, J.*, granted the defendants' motion for nonsuit for failure to plead; subsequently, the court, *Aurigemma, J.*, set aside the entry of nonsuit; thereafter, the defendants filed a counterclaim for, inter alia, injunctive relief; subsequently, the matter was tried to the court, *Aurigemma, J.*; judgment for the plaintiffs, from which

the defendants appealed to this court; thereafter, the court, *Aurigemma, J.*, denied the plaintiffs' motion for reconsideration as to damages, and the plaintiffs cross appealed to this court; subsequently, the plaintiffs withdrew their cross appeal. *Affirmed.*

*Karen L. Dowd*, with whom were *Brendon P. Levesque* and, on the brief, *Joseph Musco*, for the appellants (defendants).

*David S. Doyle*, for the appellees (plaintiffs).

*Opinion*

KELLER, J. The defendants, Jon and Jacqueline Biller, appeal from the judgment of the trial court in favor of the plaintiffs, Russell Jordan and Lorraine Jorsey. The defendants claim that the court improperly determined that a view easement granted to previous owners of their property was not appurtenant to their land. The defendants also claim that the court erred in awarding the plaintiffs damages. We affirm the judgment of the trial court.

The following facts, as found by the court, are relevant to our resolution of the defendants' appeal. The plaintiffs' property, on the bank of the Salmon River, is located at 2 Cove Road, East Haddam. The defendants are the owners of 6 Cove Road, which abuts the plaintiffs' property.

In its memorandum of decision, the court stated: "The 2 Cove Road property was part of a 101 acre parcel of land . . . owned by Paul and Mary Campbell . . . .

"[Paul and Mary Campbell] lived in a ranch house at 6 Cove Road on the 101 acre parcel of property. In 1986, Paul and Mary Campbell sold the house [along] with [eighty-nine] acres of that property to Damon and Brian Navarro, who were real estate developers." The Campbells retained 2 Cove Road, which was the remainder of their original 101 acre property, located along the Salmon River. The court further found: "During the negotiations to purchase the property from the Campbells, Damon and Brian Navarro asked the Campbells to grant them a view easement over [2 Cove Road to benefit] 6 Cove Road. Richard Shea, Jr., the Navarros' counsel, requested language in the purchase and sale contract for the property, which provided that the view easement would run with the property and be binding upon the [Campbells' (sellers')] heirs, successors, and assigns. The Campbells refused to grant a view easement which ran with the property, or bound their successors or assigns. The sales contract, or bond for deed, dated June 23, 1986, stated: 'This right is personal to the buyers and the spouses of the buyers.'

"The Campbells conveyed the property via warranty deed to Damon and Brian Navarro on September 25, 1986. At the same time the parties executed a document [titled] License and View Easement, which provides, in pertinent part:

" 'This agreement is made and entered into [on September 25, 1986], by and between Paul J. Campbell and Mary E. Campbell, both of the town of Punta Gorda . . . Florida, hereinafter referred to as "Sellers," or "Owners" and Damon Navarro, of the town of Marlborough . . . Connecticut, and Brian Navarro, of the town of Hartford . . . Connecticut, hereinafter referred to as the "Buyers" or "Licensees."

" '2. View Easement: Sellers also hereby grant to the Buyers the right to thin and trim the trees on the land retained by the Sellers lying west of the land purchased by the Buyers to permit a view of Salmon Cove from the ranch house on the land purchased by the Buyers. The area in which the Buyers shall have such right is on that portion of [the] Sellers' retained land which lies between the extension westerly of the northerly and southerly boundary lines of the meadow as the same is now constituted on the land purchased by the Buyers, which meadow lies to the west of said ranch house and is approximately [250] feet in width from its northerly to its southerly boundary lines. The Buyers hereby agree to bear the total cost of such tree trimming and tree removal, to perform or have performed the work in a good and workmanlike manner, and to remove or have removed any wood resulting from the thinning and/or trimming from the Sellers' land immediately after the said thinning and/or trimming. *It is strictly agreed and understood, however, that no thinning and/or trimming shall be performed without the agreement of the Sellers, which agreement shall not be unreasonably withheld.*' " (Emphasis in original.) This license and view easement was recorded in the East Haddam land records in Volume 219, Page 201.[1]

The court stated further: "Damon and Brian Navarro subdivided the property [that they purchased from the Campbells] as part of a subdivision known as Scoville Landing. In 1989, Damon and Brian Navarro quitclaimed a thirty acre portion of the property identified as Lot 19 of Scoville Landing to Anne Navarro. In 1992, Anne Navarro sold that property to Rolf H. Olson and Sioux S. Olson by a warranty deed.[2] . . . [T]he warranty deed contained the property description which referred to the property as 6 Cove Road and included the following language after the property description: 'Together with any and all assignable rights of Grantor to a license and view easement from Paul J. Campbell and Mary E. Campbell to Damon Navarro and Brian Navarro dated September 25, 1986, and recorded in the East Haddam land records in Volume 219, Page 201.'

"[The plaintiffs inherited the property retained by the Campbells, 2 Cove Road] via a quitclaim deed from the estate of Mary Campbell, their mother. That deed is dated December 22, 2010, and recorded at Volume 879, Page 85 of the East Haddam land records . . . .

\* \* \*

"In 2012, Sioux [S.] Olson sold the 6 Cove Road property to the defendants . . . via warranty deed, dated August 1, 2012. . . . [T]he warranty deed contained the following language after the property description: 'Together with any and all assignable rights of Anne W. Navarro to a license and view easement from Paul J. Campbell and Mary E. Campbell to Damon Navarro and

Brian Navarro [dated] September 25, 1986, and recorded in Volume 219 at Page 201 of the East Haddam land records.' . . .

"There was no evidence that at any time between 1986 and the date on which the [defendants] purchased the 6 Cove Road property that any other owner of that property had thinned or cut any trees on the 2 Cove Road property, now owned by the plaintiffs. . . .

"In the late fall of 2012, the defendants removed approximately [eighty] trees from the plaintiffs' property in the area of the direct sight line from the house at 6 Cove Road to . . . Salmon Cove. Approximately [fifty] of the felled trees had trunk diameters of more than [six] inches. The area from which the trees were removed is approximately 100 feet by 225 feet. Prior to the removal of the trees, the plaintiffs' house was surrounded by [seventy to eighty] year old forest." After the defendants cut down the trees, the plaintiffs no longer had the same levels of privacy they previously enjoyed.

"The defendants did not request permission from the plaintiffs prior to cutting down the trees. Jon Biller . . . had not even read the license and view easement prior to cutting down all the trees . . . . He . . . did not realize that [the] document required the person cutting down trees to obtain permission before doing so. [Because] the plaintiffs did not reside at the 2 Cove Road property, they were not aware that the trees had been cut down until several months later." (Footnote added.) The defendants' trimming diminished the value of the plaintiffs' property by reducing a portion of the forest into the "botanical equivalent of a bomb site."

On October 31, 2013, the plaintiffs commenced the underlying action against the defendants. In the four count operative complaint, the plaintiffs alleged that they were entitled to damages because "the defendants unlawfully came upon the plaintiffs' property without their permission or knowledge and cut down and/or damaged a substantial number of trees and/or shrubbery." The plaintiffs' complaint contained counts sounding in temporary trespass, negligence, and violations of General Statutes §§ 52-560 and 25-102a through 25-102g.[3] On January 19, 2016, the defendants answered, denying the plaintiffs' allegations, and raising several special defenses and counterclaims. The gist of the defendants' special defenses and counterclaims was that they enjoyed the benefits of an appurtenant view easement over the plaintiffs' property and this afforded them the right to cut down the trees.

The matter was tried to the court, and, on March 24, 2017, the court issued a memorandum of decision. The court found in favor of the plaintiffs on their trespass and negligence counts. The court also found in favor of the plaintiffs on the defendants' counterclaim on the

ground that the view easement granted to the Navarros "was a right personal to them," did not run with the land, and that the defendants do not enjoy a view easement over the plaintiffs' property. The court awarded the plaintiffs $446,660 in damages.[4] This appeal followed.

## I

The defendants claim that the court improperly determined that the view easement was not appurtenant to their land. The following additional facts are relevant to this claim. In 1986, the Campbells and Navarros signed two documents, a bond for deed and the license and view easement. The license and view easement was recorded in the East Haddam land records at volume 219, page 201. The bond for deed, by its terms, was not to be recorded. In addition to the previously stated provision pertaining to the view easement, the license and view easement contained a section titled "License." This section provides that the "Sellers as Licensors hereby grant to the Buyers as Licensees a pedestrian right of way to Salmon Cove over land retained by the Sellers lying west of the land purchased by the Buyers. . . . Said license may be exercised only by the Buyers and members of their families who reside with the Buyers and by the invited guests of the Buyers when accompanied by the Buyers or said members of the Buyers' families."

The unrecorded bond for deed also contains a section titled "View Easement." This section provides: "The parties hereto agree that the Buyers shall be granted the right to thin and trim the trees on said other land of the Sellers adjacent to and westerly of the Property. The area in which the Buyers shall have such right is on that portion of [Sellers'] said property which is between the extension westerly of the northerly and southerly boundary lines of the meadow as the same is now constituted on the Property, which meadow is approximately two hundred fifty (250) feet in width from its northerly to its southerly boundary lines. *This right is personal to the Buyers and the spouses of the Buyers.* The Buyers shall bear the total cost of such tree trimming and tree removal, shall perform or have such work performed in a good and workman like manner and shall immediately remove any wood resulting therefrom from [Sellers'] said land." (Emphasis added.)

The recorded license and view easement contains the following introductory clause: "Whereas, the Sellers and the Buyers had agreed in the [bond for deed] that the Sellers would grant to the Buyers at the time of transfer of title both a pedestrian right of way and a view easement upon the terms and conditions hereinafter more particularly set forth."

In addition, the plaintiffs presented the testimony of Shea, the Navarros' attorney during the negotiations

to purchase the property from the Campbells. Shea testified that he sent a proposed revision of the bond for deed to the representative of the Campbells. In this proposal, which was admitted into evidence, Shea suggested amending the portion of the bond for deed pertaining to the view easement by removing the clause that stated the view easement would be personal to the buyers, the Navarros, and adding: "This right shall run with the Property and shall be binding upon the Sellers, their heirs, successors and assigns . . . ." According to Shea, the Campbells rejected this change.

The defendants make two principal arguments in support of their proposition that the view easement is appurtenant. First, the defendants assert that the value of the view easement is so great that it evinces an intent to run with the land. Specifically, the defendants state that "prior owners, when advertising [6 Cove Road] for sale, stressed that it had water views demonstrating the value of such a view to the property. . . . [T]he [defendants] testified the view easement was critical to their purchase of the home. . . . [T]he house itself demonstrates the value of the view easement to the land, not just to the original owners. The ranch house on 6 Cove Road is situated on a slope overlooking the cove and is designed in a U shape to maximize the view." (Citations omitted.) Secondly, the defendants argue that the language in the license and view easement executed by the Campbells and the Navarros evinces that the view easement was meant to be appurtenant. They assert that the phrase the "[s]ellers . . . grant to the Buyers the right to thin and trim the trees on the land retained by the Sellers . . . to permit a view of Salmon Cove from the ranch house on the land purchased by the Buyers," when compared to a clause in the pedestrian right-of-way that limits the use of it to "only by the Buyers and members of their families," supports the conclusion that the view easement is appurtenant because the pedestrian right-of-way contains limiting language and the view easement does not.

We now turn to our standard of review. "Although in most contexts the issue of intent is a factual question on which our scope of review is limited . . . the determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary." (Internal quotation marks omitted.) *Deane* v. *Kahn*, 317 Conn. 157, 166, 116 A.3d 259 (2015).

The following legal principles guide our determination of whether an easement is personal or appurtenant. "All easements, whether express or implied, are classified as either easements appurtenant or easements in gross. In an easement appurtenant, the easement belongs to and benefits the dominant estate, and burdens the servient estate." *Powers* v. *Grenier Construction, Inc.*, 10 Conn. App. 556, 559, 524 A.2d 667 (1987).

"An easement in gross belongs to the owner of it independently of his ownership or possession of any specific land. Therefore, in contrast to an easement appurtenant, its ownership may be described as being personal to the owner of it." (Internal quotation marks omitted.) *Saunders Point Assn., Inc.* v. *Cannon,* 177 Conn. 413, 415, 418 A.2d 70 (1979).

"It is well settled that [i]f the easement makes no mention of the heirs and assigns of the grantee, a presumption is created that the intent of the parties was that merely a personal right-of-way was reserved. This presumption, however, is not conclusive. A reservation will be interpreted as creating a permanent easement if, from all the surrounding circumstances, it appears that that was the intention of the parties. . . . One circumstance which must be given great weight in the ascertainment of the intent of the parties is . . . [if the easement] is of value to the property to which it is appurtenant and will continue to be of value [to] whoever may own the property, that is strong evidence that the parties intended a permanent easement. . . . Also significant is whether the owner of the servient estate recognized the right of the subsequent owners of the dominant estate to exercise the easement. . . . Finally, we will look to the actual language of the reservation clause itself." (Citations omitted; internal quotation marks omitted.) *Deane* v. *Kahn,* supra, 317 Conn. 171–72.

"The burden of proof rests upon [the party claiming appurtenance] to show the existence of all facts necessary to prove the right-of-way was created as an appurtenance, although our review of the trial court's conclusion as to whether the parties to a conveyance intended it to be appurtenant is plenary." (Internal quotation marks omitted.) Id., 172.

The defendants concede that the view easement does not expressly convey rights to heirs and assigns of the grantee. The absence of an express grant creates a presumption that the easement was personal to the Navarros and not appurtenant to 6 Cove Road. The question is whether the defendants can overcome that presumption based on the value of the easement to the property, historical usage of the property, and the language of the view easement executed by the Campbells and the Navarros.

The defendants argue that the view easement has significant value, suggesting that it was intended to be appurtenant. When the easement "will continue to be of value [to] whoever may own the property, that is strong evidence that the parties intended a permanent easement." (Internal quotation marks omitted.) *Leabo* v. *Leninski,* 182 Conn. 611, 614–15, 438 A.2d 1153 (1981); see also *Irving* v. *Firehouse Associates, LLC,* 95 Conn. App. 713, 729–30, 898 A.2d 270 (value of right-of-way great enough to support conclusion easement

ran with land when property would be landlocked without it), cert. denied, 280 Conn. 903, 907 A.2d 90 (2006). Although our case law does not precisely define what constitutes value for the purpose of determining whether an easement is appurtenant or in gross, the claimed easement must be more than a convenience to the owner of the dominant estate. See *Stiefel* v. *Lindemann*, 33 Conn. App. 799, 808–809, 638 A.2d 642 (right-of-way to access service entrance was convenience when other means of access to property available), cert. denied, 229 Conn. 914, 642 A.2d 1211 (1994). In the present case, the only evidence that the defendants provided with respect to value to the property is their own testimony that they deemed the view easement valuable because sightlines to the river factored into their decision to purchase the 6 Cove Road property. There was no evidence as to any added monetary value due to having a view of the river. In addition, there was photographic evidence that, even after cutting down the trees, the defendants still could only view a narrow sliver of the cove from their home. Thus, we conclude that the defendants have not provided a basis to conclude that the view easement has such sufficient value to demonstrate that it was intended to run with the land.

An easement also can be found to be appurtenant when "the *owner* of the estate to be burdened recognized that subsequent *owners* of the estate to be benefitted would have a right to exercise the easement." (Emphasis in original.) *Stiefel* v. *Lindemann*, supra, 33 Conn. App. 809. In the present case, this factor supports the conclusion that the view easement is not appurtenant because neither the plaintiffs nor the Campbells ever recognized that the previous owners of the defendants' property could thin trees to take advantage of the view easement; nor was there any evidence that the previous owners of 6 Cove Road requested or attempted to "ever cut or [thin] a single tree."

Lastly, we turn to the language of the license and view easement to examine whether the easement was meant to run with the land. "The meaning and effect of the reservation are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances . . . ." *Taylor* v. *Dennehy*, 136 Conn. 398, 402, 71 A.2d 596 (1950). As previously stated, the defendants argue that the language in the section setting forth the "view easement" supports the conclusion that the view easement is appurtenant because it lacks a clause limiting the right to the Navarros, unlike the section granting the license to the pedestrian right-of-way. We are not persuaded.

The evidence pertaining to the negotiations that occurred between the Campbells and the Navarros is helpful in interpreting the intent expressed in the view

easement. Specifically, the relevant evidence includes two documents, the unrecorded bond for deed and Shea's unaccepted proposed revisions to that deed,[5] and Shea's testimony. The unrecorded bond for deed contains a provision that the view easement is a right "personal to the Buyers and the spouses of the Buyers." Shea's proposed revisions to that document reveal that the Navarros sought an appurtenant easement, but the Campbells refused to grant it.

Viewing the license and view easement in light of the negotiations that occurred between the Campbells and Navarros, we conclude that the language of the easement granted the Navarros only a personal right. First, the license and view easement acknowledges that the bond for deed reflects the parties' agreement regarding the granting of both the pedestrian right-of-way and the view easement. Second, the intent expressed in the view easement, which grants "the Buyers the right," is that the benefit was not intended to run with the land. This is well supported by the evidence that the term "Buyers" is defined as and limited to Brian Navarro and Damon Navarro in the first paragraph of the license and view easement, that the parties agreed the easement was personal in the unrecorded bond for deed, and that Shea testified that the Campbells rejected an appurtenant easement. As a result, by defining the term "Buyers" as Brian Navarro and Damon Navarro, and acknowledging the nature of the parties' agreement in the bond for deed, the view easement does contain the sufficient limiting language that the defendants argue is lacking.

On the basis that the view easement has not been proven to enhance the value of the defendants' property, the lack of historical usage of the easement, and the intent of the parties expressed in the bond for deed and the license and view easement, we conclude that the defendants do not enjoy the rights of an appurtenant easement. The defendants cannot overcome the presumption that the view easement is not appurtenant. It was an easement in gross granted only to the Navarros. Therefore, their claim must fail.

## II

The defendants' second claim is that the court erred in awarding the plaintiffs damages. Specifically, the defendants argue that "[i]f this [c]ourt finds that the defendants have rights under the view easement, then any award of damages must be reversed." The defendants do not take issue with the method the court used to calculate damages. Instead the defendants' claim is predicated on the defendants enjoying the rights to the view easement, and because we have decided that the view easement was not appurtenant, we conclude that this claim warrants no further discussion. Even if we were to conclude that the defendants enjoy the rights of an easement appurtenant, in accordance with the

terms of the view easement, the defendants needed to obtain the plaintiffs' permission before cutting down or trimming any trees. Their undisputed failure to obtain such permission from the plaintiffs provides further support for the court's damages award.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The bond for deed contemplated that the Campbells would provide the Navarros with a warranty deed, but no warranty deed for the transaction is in evidence.

[2] In the warranty deed granted to the Olsons, although the property description attached as Schedule A refers to a utility company easement, an emergency access easement, and a well easement, there is no mention of the view easement.

[3] The court concluded that the plaintiffs abandoned their statutory causes of action because "[t]he plaintiffs have specifically stated that they are not proceeding under . . . § 52-560" and "[t]hey have not addressed [their §§ 25-102a through 25-102g claims] in their posttrial memorandum."

[4] The plaintiffs' expert, Michael DiFranco, an arborist, testified that the cost to replace the trees would be at least $396,660 and estimated that it would cost $50,000 to clean up the debris left behind after the tree work. The court did not base its award on the plaintiffs' evidence that the tree cutting diminished the value of their property.

[5] The defendants claim that the unrecorded bond for deed and the license and view easement should have been precluded because they are parol evidence. This claim was preserved because the defendants filed a motion in limine to preclude these documents from being admitted into evidence on the ground that they were inadmissible parol evidence and renewed this objection in a timely manner at trial. Nevertheless, in accordance with Practice Book § 67-4 (d), claims on appeal must be divided into separate parts and each point must include a separate brief statement of the appropriate standard of review in order to be adequately briefed. As the defendants have not provided this, we are not required to review this claim. See *Carmichael* v. *Stonkus*, 133 Conn. App. 302, 308–309, 34 A.3d 1026, cert. denied, 304 Conn. 911, 39 A.3d 1121 (2012).

Regardless, "[a]lthough the parol evidence rule prohibits the introduction of evidence that varies or contradicts an exclusive written agreement . . . that rule does not bar the use of extrinsic evidence to aid in the interpretation of contractual language." (Citation omitted; internal quotation marks omitted.) *Hare* v. *McClellan*, 234 Conn. 581, 596, 662 A.2d 1242 (1995). As previously stated, the license and view easement is ambiguous because it does not expressly state whether the right is appurtenant or in gross. Additionally, interpretation of an easement requires reading it in light of the surrounding circumstances. Accordingly, these documents were properly admitted into evidence.