[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This lawsuit first came to this court by writ, summons and complaint dated June 29, 1992, and returnable September 15, 1992, seeking a judgment determining plaintiffs' rights as owner of a certain parcel of land as more particularly set out in said complaint to an easement and right-of-way involving premises situated in the Town of Waterford, County of New London.
The file reflects an affidavit of personal service as to the defendant Joan Williams, Administratrix of the Armstrong Family Trust, by a Deputy Sheriff, indicating service on August 11, 1992 in Los Angeles, California, and an accompanying military affidavit.
Service as to the defendant Joan Williams, Administratrix, was also effected on New London Probate Judge Linda M. Salafia as Agent for Service of Process for the Armstrong Family Trust.
A Motion for Default for Failure to Appear as to the defendant Joan Williams, Administratrix was filed on October 21, 1992 and granted by the clerk on October 21, 1992.
A Motion for Judgment on the Default as to the defendant Joan Williams, Administratrix was filed on November 18, 1992 CT Page 12925 and granted by the court O'Connell, J. on December 7, 1992.
The defendant Cavarly Realty Corp. appeared by counsel on September 23, 1992.
A Motion for Default for Failure to Plead as to the defendant Cavarly Realty Corp., filed January 11, 1993, was granted by the clerk on January 11, 1993, but vacated by the court Austin, J. at the time of trial on November 16, 1994.
The defendant Cavarly Realty Corp. filed an Answer With Special Defenses and a Cross Claim on January 20, 1993.
A Reply to the Special Defenses was filed by the plaintiff on February 1, 1993.
On November 16, 1994, at the time of trial, the defendant Cavarly Realty's Motion for Default as to the defendant Joan Williams, Administratrix for failure to appear and plead to Cavarly's Cross Claim was granted by the court Austin, J. The defendant Cavarly Realty Corp. at this time withdrew its claim against Joan Williams, Administratrix as to "future diminution in value of the leasehold interest." Plaintiffs' Motion for Leave to Amend Complaint dated November 14, 1994 was granted by the court Austin, J. on November 16, 1994.
Plaintiffs' Request for Leave to Amend dated November 17, 1994 and file a Second Amended Complaint was granted by the court on November 17, 1994.
The trial commenced on November 16, 1994 and continued on November 17, 1994 to a conclusion.
Upon the conclusion of the testimony and the arguments of counsel the court in company with counsel traveled to the subject site and viewed the premises in close detail.
Counsel for the plaintiffs and defendant Cavarly Realty Corp. filed a signed Stipulation of facts with the Court which stipulation dated November 16, 1994 and filed November 17, 1994 is set forth herein.
STIPULATION OF FACTS
The plaintiffs Charles Breyer and Requiserv East, Inc. CT Page 12926 and the defendant Cavarly Realty Corporation in the above captioned matter hereby stipulate to the following facts:
1. Requiserv East, Inc. is the owner of a parcel of land in Waterford. This property is more fully described in the Town of Waterford Land Records, Volume 181, page 594. (Exhibit 1.) Exhibit 17 is a map of Parcel A.
2. The plaintiff Charles Breyer acquired title to Parcel A by deed from Michael Schaffer dated March 12, 1970. (See Town of Waterford Land Records, Volume 181, page 594.) (Exhibit 1.)
3. The plaintiff Charles Breyer acquired title to Parcel D, which abuts Parcels A and C and is located partly in Waterford and partly in New London, by deed from the City of New London dated August 7, 1975. (See New London Land Records, Volume 397, page 132.) (Exhibit 2.) Subsequently Breyer conveyed the Waterford portion of Parcel D to Requiserv East, Inc.
4. Parcel A abuts property believed to be owned by the DeMatteo Construction Company, which property currently holds the New London Mall, which property is hereinafter referred to as "Parcel B."
5. Parcel A also abuts property owned by the defendant Joan Williams, Administratrix of the Ruth Armstrong Family Trust, which property is hereinafter referred to as "Parcel C."
6. Parcel C is currently subject to a lease between the defendant Joan Williams, Administratrix of the Ruth Armstrong Family Trust, and the defendant Cavarly Realty Corporation, which lease is dated December 29, 1960. (See Notice of Lease recorded in the New London County Land Records, Volume 291, page 131 (Exhibit 3) and Lease dated December 29, 1960. (Exhibit 4.)
7. Prior to July, 1966, Ruth Armstrong owned both Parcel C and a portion of Parcel B.
8. In July, 1966, Ruth Armstrong conveyed a portion of Parcel B to Bayonet Realty Corporation by quit claim deed. (See New London Land Records, Volume 321, page 198.) (Exhibit CT Page 12927 5.)
9. In July, 1966, Ruth Armstrong also conveyed to Bayonet Realty Corporation a 22 foot right of way extending westerly across Parcel C to Route I-95 which Parcel C was leased to Cavarly Realty Corporation, the exact location of said right-of-way to be determined by Cavarly Realty Corporation. (See New London Land Records, Volume 321, page 201.) (Exhibit 14.)
10. In 1968 by grants and agreements between Cavarly Realty Corporation and Bayonet Realty Corporation and between Ruth Armstrong and Bayonet Realty Corporation, the right-of-way was defined and located extending across Parcel C to Route I-95. (See New London Land Records, Volume 330, page 397) (Exhibit 6) and Volume 330, page 402 (Exhibit 7.))
11. In 1968 by agreement between Bayonet Realty Corporation, as owner of Parcel B, and Warren J. Kloorfain, then owner of Parcel A, Bayonet Realty Corporation purported to grant to Warren J. Kloorfain, his heirs, successors and assigns, rights-of-way over and across the parking aisles and driveways of Parcel B and ingress and egress to Bayonet Street and to and from the I-95 service road. (See New London Land Records, Volume 330, page 407.) (Exhibit 8.)
12. In 1969, another agreement was made between Bayonet Realty Corporation as owner of Parcel B and Michael Schaffer, then owner of Parcel A. (See New London Land Records, Volume 336, page 157 (Exhibit 9) and Town of Waterford Land Records, Volume 180, page 80 (Exhibit 9.))
13. On March 2, 1970, Bayonet Realty Corporation sold Parcel B to the plaintiff Charles Breyer. The 1966 right of way over Parcel C was included in this conveyance. (See New London Land Records, Volume 338, page 85.) (Exhibit 15.) Exhibit 18 is a true copy of a map of Parcel B.
14. On March 12, 1970, the plaintiff Charles Breyer purchased Parcel A from Michael Schaffer. (See Town of Waterford Land Records, Volume 181, page 594.) (Exhibit 1.) The deed conveying Parcel A to the plaintiff Breyer from Michael Schaffer provided that the property was conveyed subject to the effect of the 1968 Bayonet/Kloorfain agreement and subject to the rights, easements and provisions of the CT Page 12928 1969 Bayonet/Schaffer agreement. (See Town of Waterford Land Records, Volume 181, page 594.) (Exhibit 1.)
15. On July 1, 1971, the plaintiff Charles Breyer quit claimed Parcel A to plaintiff Requiserv East, Inc. while retaining ownership of Parcel B. (See Town of Waterford Land Records, Volume 189, page 142.) (Exhibit 11.)
16. On May 19, 1972, another agreement for access between Parcel A and Parcel B was entered into between the plaintiff Charles Breyer as owner of Parcel B, and plaintiff Requiserv East, Inc. as owner of Parcel A. (See New London County Land Records, Volume 349, page 740.) (Exhibit 10.)
17. Said agreement dated May 19, 1972 purported to grant Requiserv East, Inc., as owner of Parcel A, unrestricted parking rights in Parcel B, along with rights-of-way from Parcel A to Bayonet Street and to the Route I-95 Frontage Road.
In addition to the Stipulation of facts by counsel, the court finds the following:
Requiserv East Corp. is a New Jersey corporation. Requiserv was set up by Breyer to separate business and personal matters from each other.
Breyer has only visited the premises sporadically over the years. Breyer has had various parties interested in Parcel A from time to time including the Marriott chain but access was always a problem. Motel 6 was also an interested party at one time.
Cavarly Realty Corp. is a Connecticut corporation and the lessee of Parcel C. See Plaintiffs' Exhibit 4. The initial term of this lease is for 20 years with options to extend. Cavarly is now in the first option extension term of 20 years.
There are two basic issues presented by this declaratory judgment action: (1) Do Exhibits 8, 9 and 10 purport to give Parcel A the right to use the 22 foot right-of-way leading from Parcel B across Parcel C to Frontage Road? and (2) If so, are the grants by Parcel B to Parcel A contained in Exhibits 8, 9 and 10 lawful or are they unlawful expansions of the right granted to Parcel B by Parcel C to use the 22-foot CT Page 12929 right-of-way over Parcel C to Frontage Road?
PARCEL A
The record in this case shows the title to Parcel A to be as follows:
1. Exhibit 8, dated August 28, 1968 shows the owner of Parcel A to be Warren J. Kloorfain, Trustee.
2. Exhibit 9, dated September 15, 1969 shows the then owner of Parcel A to be Michael I. Schaffer. There are no deeds or other instruments in evidence to show how title passed from Kloorfain to Schaffer.
3. Exhibit 1 is the March 12, 1970 deed of Parcel A from Schaffer to Breyer. The deed says "The Parcel herein conveyed is an interior parcel and does not abut any street or road and does not have rights of ingress and egress to and from any street or road."
4. Exhibit 11 is the July 1, 1971 deed of Parcel A from Breyer to Requiserv East, Inc.
5. At trial, the parties stipulated that Requiserv East, Inc. is still the record title holder to Parcel A.
PARCEL B
The trial record shows title to Parcel B to be as follows:
1. Exhibit 5 is the deed dated in July, 1966 (Stipulation, paragraph 8) from Ruth Armstrong to Bayonet Realty Corp. of a portion of Parcel B. The description in the deed shows the land conveyed to be that portion of Parcel B lying directly between Parcel C and Bayonet Street, as shown by the line on Exhibit 18 (the smaller map) running from the northeast corner of Parcel C to Bayonet Street. The description describes the parcel conveyed as running from the town line between Waterford and New London at Bayonet Street southwest 796.91 feet along the town line to other land of Ruth Armstrong (Parcel C), then running southeast 311.87 feet along other land of Ruth Armstrong (Parcel C) to the northwesterly line of Bayonet Realty Corp., then running CT Page 12930 720.35 feet along land of Bayonet Realty Corp. to Bayonet Street, and then running a total of 272.75 feet along Bayonet Street to the point of beginning.
2. Exhibit 9, dated September 15, 1969, speaks of Bayonet as the owner of the New London mall property containing 25.04 acres, which corresponds with the 25.04 acres in Parcel B shown on Exhibit 18.
3. Exhibit 15, dated March 2, 1970 (Stipulation, paragraph 13) is the deed conveying Parcel B from Bayonet to Breyer.
4. Exhibit 10, dated May 19, 1972, shows Breyer as still the owner of Parcel B.
5. Trial testimony was that Breyer no longer owns Parcel B, and that the present owner is DeMatteo Construction Corp. There are no instruments in the record showing the date on which Breyer ceased being owner of Parcel B.
PARCEL C
The evidence shows the title to Parcel C to be as follows:
1. Exhibit 4, the lease from Ruth Armstrong to Cavarly, is dated December 29, 1960. It shows Ruth Armstrong as the owner of Parcel C.
2. Exhibit 16, dated January 3, 1975, is a probate certificate showing the death of Ruth Armstrong and the transfer of title to Parcel C to the Ruth Armstrong family trust, which still owns Parcel C.
PARCEL D
The title to Parcel D is as follows:
1. Exhibit 2, dated August 7, 1975 conveys Parcel D, which is located partly in New London and partly in Waterford, to Breyer.
2. By Exhibit 13, dated December 15, 1975, Breyer conveyed the Waterford portion of Parcel D to Requiserv East, Inc. CT Page 12931
THE 22-FOOT RIGHT-OF-WAY
1. The two 22 foot rights-of-way are first created in Exhibit 4, the December 29, 1960 lease from Armstrong to Cavarly. They appear as the last two paragraphs of Exhibit A to the lease. The first is described as follows:
 "Together with a right of way for any and all purposes twenty-two (22) feet in width adjacent to the boundary of remaining land of Ruth Armstrong and the town line of Waterford from the above described premises to Bayonet Street."
That right-of-way runs on Parcel B from the property line between Parcels B and C to Bayonet Street along the Waterford town line. It is for the benefit of Ruth Armstrong, the owner of Parcel C and of Cavarly, the lessee of Parcel C. It is that right-of-way that permits patrons going to businesses on the Armstrong/Cavarly premises to come from Bayonet Street to Parcel C, and for patrons leaving Parcel C to depart to Bayonet Street. In this lawsuit there is no controversy concerning the 22-foot right-of-way over Parcel B.
The other right-of-way created by the Lease is as follows:
 "Subject to a right-of-way twenty-two (22) feet in width from remaining land of Ruth Armstrong to the Thames River Bridge Approach in favor of Ruth Armstrong, her heirs and assigns, at a location to be selected by Lessee and to connect with the aforesaid right-of-way."
That right-of-way was created for the benefit of Ruth Armstrong's remaining land, that is, the portion of Parcel B between Parcel C and Bayonet Street, which was owned by Ruth Armstrong in 1960, in order to give that portion of Parcel B access across Parcel C to Frontage Road.
2. The next right-of-way item is Exhibit 5, dated July, 1966, by which Armstrong conveyed her remaining land, the portion of Parcel B lying between Parcel C and Bayonet Street, to Bayonet Realty Corp. By its terms, the portion of Parcel B conveyed by Armstrong was made subject to Cavarly's CT Page 12932 right-of-way to bayonet Street, as follows:
 "Said premises are subject to a right of way twenty-two (22) feet in width extending in a northeasterly direction from the northerly corner of other land of Ruth Armstrong [Parcel C] to Bayonet Street; the northwesterly line of said right of way is the Waterford-New London Town Line."
3. At the same time, Ruth Armstrong conveyed by Exhibit 14 dated July 6, 1966 to Bayonet Realty Corp. the right-of-way that she had retained for the benefit of her portion of Parcel B over Parcel C to Frontage Road, in these words:
 "I, Ruth Armstrong, . . . do . . . forever QUIT CLAIM unto the said BAYONET REALTY CORP., its successors and assigns forever, all such right and title as I the said Ruth Armstrong have or ought to have in or to a right-of-way situated in the Town and County of New London and State of Connecticut, being twenty-two feet in width and extending in a generally westerly direction from premises this day conveyed by the Releasor to the Releasee, to Route I-95, across premises of the Releasor now under lease to the Cavarly Realty Corporation, the exact location of said right-of-way to be determined by said Cavarly Realty Corporation."
By that Quit-Claim Deed, Ruth Armstrong gave Bayonet Realty Corp. whatever right-of-way she had retained over Parcel C in the Lease, Exhibit 4.
4. The next two items in the right-of-way chain are Exhibits 6 and 7, dated August 15 and 20, 1968, by which Armstrong and Cavarly convey the actual location of the right-of-way over Parcel C to Bayonet Realty Corp. The location of the right-of-way corresponds with that shown on Exhibit 17. The conveying clause on Page 2 of each of the conveyances grants "to Bayonet, and to its successors and assigns, for the use and benefit of said Bayonet premises, a perpetual right-of-way and easement . . ." That language establishes that the easement over Parcel C is only for the benefit and use of Parcel B, and for no other land. It makes Parcel B the dominant estate and Parcel C the servient estate. Curtin v.CT Page 12933Franchetti, 156 Conn. 387, 389 (1968).
5. The next item in the right-of-way chain is Exhibit 8, an agreement dated August 28, 1968 between Bayonet Realty Corp. and Kloorfain, Trustee. At the time, Bayonet Realty Corp. was the owner of Parcel B and Kloorfain was the owner of Parcel A. By that agreement, Bayonet Realty Corp. grants to Kloorfain,
 "for the use and benefit of the patrons, customers, employees, tenants, lessees, invitees and licensees of KLOORFAIN, his heirs, successors and assigns, the privilege of unrestricted parking rights on the parking areas, as such parking areas shall from time to time be located, on said BAYONET PREMISES, together with rights of way in, over, upon and across the parking aisles and driveways of Bayonet premises as such parking aisles and driveways shall from time to time be located, for the purpose of ingress and egress to and from said KLOORFAIN PREMISES to and from Bayonet Street and to and from I-95 Service Roads."
Given the fact it was executed on August 28, 1968, only a few days after Exhibits 6 and 7 and appears to have been recorded at the same time as Exhibits 6 and 7, there is no mention in Exhibit 8 of the right-of-way across Parcel C to Frontage Road. By its terms, it grants Parcel A rights-of-way over the parking aisles and driveways of Parcel B, and as the testimony, exhibits and viewing of the site show, vehicles can get from Parcel A to both Bayonet Street and Frontage Road entirely on the parking aisles and driveways on Parcel B, without the need to use the right-of-way across Parcel C.
Exhibit 8 does not purport to convey to Kloorfain any right to use the right-of-way across Parcel C.
The deed by which Kloorfain deeded Parcel A to Schaffer is not in evidence. As a result, there is no evidence that the benefit of Exhibit 8 was ever transferred to the new owner of Parcel A, and, therefore, Exhibit 8 need be considered no further. See Harris v. Thomas, 148 Va. 189, 193,138 S.E. 728, 730 (1927) for the proposition that the owner of an easement may convey his land without the easement. CT Page 12934
6. Exhibit 9, an agreement between Bayonet Realty Corp. and Schaffer, by then the owner of Parcel A. It is virtually identical to Exhibit 8, and similarly makes no mention of the right-of-way over Parcel C.
7. Exhibit 15, the deed dated March 2, 1970 (Stipulation, ¶ 13) by which Bayonet Realty Corp. conveyed Parcel B to Breyer. It conveys to Breyer, as owner of Parcel B, the right-of-way over Parcel C, and it quite properly indicates that Parcel B is subject to Parcel C's right-of-way over Parcel B to Bayonet Street. It also indicates that Parcel B is subject to "easements, rights and agreements of record."
8. The next item in the right-of-way chain is Exhibit 1, the March 12, 1970 deed by which Schaffer conveyed Parcel A to Breyer. After describing Parcel A, the deed goes on to say "said premises are conveyed subject to the following:" but although there is a "subject to" clause, there is included in the deed no "together with" clause.
Paragraph 2 of the "subject to" items is as follows:
 "Rights, easements and provisions contained in an agreement between Bayonet Realty Corp. and Michael A Schaffer, dated September 15, 1969 and recorded in Volume 180 at page 80 of the Waterford Land Records."
Paragraph 3 of the "subject to" items makes Parcel A subject to "the effect if any of an agreement between Bayonet Realty Corp. and Warren J. Kloorfain, Trustee dated August 28, 1968 and recorded in Volume 174 at page 629 of the Waterford Land Records." Parcel A is subject to that agreement (Exhibit 8) because it subjects Parcel A to use by Parcel B.
The final item of the "subject to" items is Paragraph 8,
 "The Parcel herein conveyed is an interior parcel and does not abut any street or road and does not have rights of ingress and egress to and from any street or road."
That paragraph is consistent with the fact that Exhibit 1 merely makes Parcel A "subject to" the rights of Parcel B CT Page 12935 over Parcel A given in Exhibit 8 and 9, and that Exhibit 1 does not include a "together with" clause transferring to Breyer the rights of Parcel A over Parcel B. It is also consistent with the fact that Parcel B was already owned by Breyer when Schaffer deeded Parcel A to Breyer, and as owner of Parcels A and B, Breyer had no need of formal arrangements between the two parcels.
Because between March 12, 1970 and July 1, 1971, Breyer owned both Parcels A and B, the doctrine of merger caused the extinguishment of any rights-of-way that Parcel A had over Parcel B and that Parcel B had over Parcel A. The subsequent conveyance of Parcel A to Requiserv East, Inc. did not revive the rights-of-way. Fitarides v. Holman, 310 A.2d 65, 67 (Me. 1973).
9. Exhibit 11, the July 1, 1971 deed by which Breyer as owner of Parcel A conveyed Parcel A to Requiserv East, Inc. That deed does not purport to grant any rights-of-way to Requiserv East, Inc., but the language in the "to have and hold" clause: "with the appurtenances thereof" is sufficient to convey to Parcel A any rights-of-way appurtenant to Parcel A Dunn Bros., Inc. v. Lesnewsky, 164 Conn. 331, 336 (1973).
10. Exhibit 10, the May 19, 1972 agreement between Breyer as owner of Parcel B and Requiserv East, Inc. as owner of Parcel A. In that agreement, Parcel B is spoken of as the "Breyer Premises" and Parcel A is spoken of as the "Requiserv Premises." The final whereas clause is interesting:
 "WHEREAS, the parties hereto desire to grant certain rights and privileges to each other, for their mutual benefit, respecting both of said premises, and in respect of rights of ingress and egress between the BREYER PREMISES and the REQUISERV PREMISES, which said rights had heretofore been established by easement agreements of record, but which said rights may have been extinguished under the doctrine of merger, and are intended hereby to be irrevocably reestablished."
The whereas clause makes it clear that Exhibit 10 was intended to establish rights of ingress and egress between Parcel A and Parcel B, but it does not say that it was intended to give Parcel A any right over Parcel C to Frontage Road. The CT Page 12936 granting clauses are consistent with that purpose. Parcel A is given rights-of-way over the parking aisles and driveways of Parcel B for the purpose of ingress and egress to Bayonet Street and to Frontage Road, both of which can be accomplished entirely on Parcel B. Exhibit 10 gives A no right to use the right-of-way over Parcel C.
In addition, the familiar principle that a document should be construed against its draftsman is applicable here.Sturman v. Socha, 191 Conn. 1, 9 (1983). While there is no evidence as to who prepared Exhibit 10, Breyer has testified that he was the sole officer, director and shareholder of Requiserv East, Inc., and that it was his alter ego. That puts him on both sides of Exhibit 10, and as against Cavarly, a stranger to Exhibit 10, the document should be construed against the draftsman, either Breyer or the corporation that is his alter ego.
EXHIBITS 8, 9 AND 10 DO NOT PURPORT TO GIVE PARCEL A THERIGHT TO USE THE 22-FOOT RIGHT-OF-WAY LEADING FROM PARCEL BACROSS PARCEL C TO FRONTAGE ROAD.
1. By their terms, Exhibits 8, 9 and 10 only give Parcel A rights-of-way across the driveways and parking aisles located on Parcel B to reach Bayonet Street and Frontage Road. The meaning of Exhibits 8, 9 and 10 is to be resolved by "seeking the intent of the parties as expressed in the deed, and this intent is to be ascertained by reading the words of the deed in the light of the circumstances." Birdsey v.Kosienski, 140 Conn. 403, 410 (1953).
2. Because Exhibit 1 deeded Parcel A to Breyer (1) "subject to" Exhibits 8 and 9, (2) without any "together with" clause, and (3) with a description describing Parcel A as having no access to Bayonet Street or Frontage Road, Breyer as owner of Parcel A never received the right to the benefit of Exhibits 8 and 9.
3. Because of the doctrine of merger, Exhibits 8 and 9 were extinguished when Breyer was the owner of both Parcels A and B.
4. Exhibit 10 should be construed against the plaintiffs because Breyer either directly or through Requiserv East, Inc. is its draftsman. CT Page 12937
IF EXHIBITS 8, 9, AND 10 COULD CONCEIVABLY BE CONSTRUED TOGIVE PARCEL A THE RIGHT TO USE THE 22-FOOT RIGHT-OF-WAY OVERPARCEL C TO FRONTAGE ROAD. THEY CONSTITUTE AN UNLAWFUL EXTENSIONOF THE RIGHT-OF-WAY, AND PARCEL A CANNOT USE THE RIGHT-OF-WAY.
 No right-of-way appurtenant can be created without a dominant as well as a servient estate. Deregibus v. Silberman Furniture Co., 121 Conn. 633, 637, 186 A. 553. The dominant estate enjoys the benefit of the way, and the servient estate bears the burden. The way can become legally attached to the dominant estate only if the same person has unity of title to both the way and the dominant estate. 25 Am.Jur.2d 426, Easements and Licenses, § 11; 28 C.J.S. 634, Easements, § 4. A way appurtenant cannot be used for the benefit of land other than the dominant estate. 2 Thompson, Real Property (161 Repl.) § 322, p. 76.
Curtain v. Franchetti, 156 Conn. 387, 389 (1968).
Here the dominant estate is Parcel B and the servient estate is Parcel C. Bayonet Realty Corp. owned at least the portion of Parcel B lying between Parcel C and Bayonet Street when it was granted the right-of-way by Ruth Armstrong on July 6, 1966 (Exhibit 14), and it owned all of Parcel B when the location of the right-of-way was fixed on August 15 and 20, 1968 (Exhibits 6 and 7). Bayonet Realty Corp. was also the owner of the right-of-way, and since the only land it owned was Parcel B, the right-of-way could only be appurtenant to Parcel B.
The dominant estate, Parcel B, never could effectively grant the use of its right-of-way for the benefit of land (Parcel A) other than the dominant estate. Curtain v.Franchetti, 156 Conn. at 389 (1968); Lichteig v. Churinetz,9 Conn. App. 406, 411 (1986); Tamburo v. Murphy, 72 Misc.2d 120,123, 339 N.Y.S.2d 693, 696-7, aff'd 340 N.Y.S.2d 881 (1970).
CAVARLY'S CROSS-CLAIM AGAINST DEFENDANT WILLIAMS
At the commencement of the trial the court entered a default against defendant Williams on Cavarly's cross-claim. CT Page 12938 At the same time, Cavarly withdrew that portion of its cross-claim which seeks damages for the diminution in the value of Cavarly's leasehold interest in Parcel C, leaving only its claim for costs and expenses including attorney's fees, in this lawsuit. That claim is based on Williams' breach of paragraph 20 of the Lease (Exhibit 4), which promises the Lessee quiet enjoyment.
At trial Cavarly's officer and director Thomas Castle testified that the corporation had already paid between $5,000 and $6,000 in legal fees in defending this suit, and had received an estimate from Wiggin Dana of $9,000 further in legal fees for the trial, including pretrial preparation and post trial briefs.
The plaintiffs have the burden of proof in this declaratory judgment action. Scott v. General Iron WeldingCo., 171 Conn. 132, 139 (1976). They must establish both (1) that the instruments give Parcel A the right to use the 22-foot right-of-way leading from Parcel B across Parcel C to Frontage Road, and (2) that the instruments are lawful and not unlawful extensions of the right-of-way granted to Parcel B by Parcel C. Plaintiffs failure to establish either (1) or (2) is sufficient to cause plaintiffs to lose, but they have failed to establish both (1) and (2).
Judgment may enter declaring that Parcel A does not have a right-of-way over Parcel C to Frontage Road.
The court takes no position as to any post trial claim that Requiserv East or Breyer may make as concerns the defaulted Joan Williams, Administratrix for the Ruth Armstrong Family Trust.
The sole issue before the court is the determination of the plaintiffs' rights of access over Parcel C as against the current lessee and appearing defendant Cavarly Realty Corp.
The court observes that during the trial neither party sought to present testimony by a competent title searcher, nor offer any competent title examiner. The court also observes that all of the deeds necessary to establish a continuous chain of title during the requisite time frame were not offered as exhibits. CT Page 12939
The court also observes that no testimony nor exhibit was offered as to the current status of the New Jersey corporate plaintiff.
The court has carefully read each deed of conveyance in an effort to correctly interpret the content thereof.
Exhibits 17 and 18 leave much to be desired in terms of being able to carefully relate the descriptions contained in the various deeds to the maps.
The court notes the so called "Enos" map was not made an exhibit. The court notes that it is difficult or impossible to read all the course lines and distances on Exhibit 18 because of the poor quality of their copy made an exhibit.
If some of the maps referred to in the various deeds had been made exhibits the task of the court would have been made easier.
The court is at a loss to understand, after having viewed the New London Mall premises so called, why the defendant Ruth Armstrong Family Trust would abandon or neglect this lawsuit mindful of the importance of the premises in terms of location and value.
The court notes with interest the fact that this action filed on September 3, 1992 shows Charles J. Breyer as the sole plaintiff until time of trial when leave was requested to amend the complaint indicating that Requiserv East, Inc. be made a party plaintiff.
Requiserv acquired title to the subject Parcel A premises in 1971.
Physical viewing of the premises shows Parcel A as being generally wooded and bounded in part by a large lake or pond.
While the plaintiff may characterize gaining access to Frontage Road over the parking areas of Parcel B as ridiculous, a viewing and inspection of the premises indicates it is easily done.
The defendant Cavarly offered no detailed information regarding arrangements for legal fees, hourly rates, etc. nor CT Page 12940 did their counsel provide any itemized statement or breakdown as to time spent or hourly rates.
The court, however, accepts counsel's representations as to billings already made to Cavarly and allows attorney's fees in the amount of $5,000.
Judgment may enter that Parcel A premises now owned by Requiserv East, Inc. does not have a right of way over Parcel C to Frontage Road.
Austin, J.